**Jack J. BRUCE, Appellant,**

v.

**TRAVELERS INSURANCE COMPANY, Appellee.**

No. 17508.

United States Court of Appeals Fifth Circuit.

April 20, 1959.

---

William R. Tete, Lake Charles, La., for appellant.

John A. Hickman, Lawes, Cavanaugh, Hickman & Brame, Lake Charles, La., for appellee.

Before RIVES, JONES and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

■ There are two aspects to the question at issue on this appeal: (1) What is an "executive officer", as that term is used in a public liability insurance policy covering a large oil company and its executive officers? (2) Is the question a matter for the court to decide on a motion for summary judgment or for a jury to decide after a trial?

Jack Bruce, plaintiff-appellant, was employed as a roughneck by the Gulf Drilling and Well Service. Bruce's employer, was engaged in reworking an oil well for Gulf Refining Co. (Gulf), a company unrelated to Bruce's employer, when Bruce was injured as the result of negligence on the part of a Gulf employee, H. J. Collins.

■ It is conceded that Bruce is entitled to recover from Gulf under the Louisiana Workmen's Compensation Law. LSA–R.S. 23:1061. As the employee of an independent contractor, he is barred from recovering damages from Gulf in tort.[1] Travelers Insurance Company carries a public liability insurance policy on Gulf that also provides extended coverage for "any executive officer, director or stockholder * * * while acting within the scope of his duties". Bruce brought suit for personal injuries against Travelers, under the Louisiana Direct Action Statute, as the insurer of Collins. LSA–R.S. 22:655. The theory of the complaint is that Collins was an executive officer of Gulf, since he was "invested with the general conduct and control of the business of Gulf Refining" at the well location.

Travelers filed a motion for a summary judgment, and introduced affidavits, depositions, and Gulf's charter and by-laws to show that Collins was not an executive officer of Gulf. The plaintiff offered no counter-affidavits or depositions, taking the position that he was entitled to have the jury determine whether Collins was an executive officer.

The trial judge found that the Gulf area superintendent assigned Collins to work as a drilling foreman ( a "tool pusher" or "ramrod", in the jargon of the oil industry), and that Collins was at all times under the supervision of the area superintendent. Collins' job, the trial judge stated, consisted "primarily in seeing that the contractor performed his duties, as outlined in the contract, to

1. Hall v. Continental Drilling Co., 5 Cir., 1957, 245 F.2d 717; Fontenot v. Stanolind Oil & Gas Co., D.C.La., 144 F.Supp. 818, affirmed 5 Cir., 243 F.2d 574.

insure that the equipment furnished on location by Gulf Refining Company was not misused or damaged, and to see that the contractor exercised all necessary precautions to control the well". Collins was never elected or chosen by the Board of Directors of Gulf as an officer with any term of office, powers or duties, or salary fixed by the Board. On these findings the trial judge held:

> "We reach the inescapable conclusion that Collins was not an executive officer. If a jury were to hold otherwise I would, under the law, feel it my duty to set the verdict aside, because there is no issue of fact to be submitted to a jury on the decisive issue of coverage."

The court granted the motion for a summary judgment and dismissed the complaint. We affirm.

## I.

Paragraph 26 of Gulf's by-laws specifically names the officers of Gulf and provides that the officers must be elected by the board of directors. It reads:

> "The officers of the corporation shall be chosen by the directors and shall be a chairman of the board, a president, one or more vice-presidents, a secretary, a treasurer, a comptroller and a general counsel. The board of directors may also choose one or more assistant secretaries, assistant treasurers and assistant comptrollers. Two or more offices may be held by the same person, except that where the offices of president and secretary are held by the same person, such person shall not hold any other office."

Paragraph 28 provides that the Board of Directors may appoint such "other officers" as it shall deem necessary. They hold office for such terms and exercise such powers as the Board determines. Paragraph 32 of the by-laws provides that the president of the corporation shall be the "chief executive officer" of the corporation.

This language is free from ambiguity. The intention of these provisions of the by-laws is clearly to allow the corporation to determine for itself what persons shall be officers and how they shall be chosen. In this case such intention does not conflict with any statute nor does the denomination of certain persons as officers cut across any statutory use of the term "officers" having a broad frame of reference.

No court in this part of the world can ignore the common knowledge that a large oil company having thousands of employees and representatives has hundreds of employees and representatives in positions of great responsibility. But tool pushers, ramrods, supervisors, drilling superintendents, area superintendents, or other employees having responsible duties are not officers, under the unambiguous by-laws of Gulf Refining Company. Nor can it be said a tool pusher or a ramrod or a supervisor at a well location functions in an executive capacity, as "executive officer" is understood in the ordinary acceptance of the term. The term implies some sort of managerial responsibility for the affairs of the corporation generally and it imports a close connection with the board of directors and high officers of the company. Insurance policies should be construed liberally, but the words of a policy must be given the meaning they ordinarily bear. "No strained or unusual construction should be given to any of the terms of a policy of insurance, in favor of the insurer or of the insured". Empire Life Insurance Co. v. Gee, 1912, 178 Ala. 492, 60 So. 90, 92. Or, we add, in favor of a third party claimant.

The distinction between an agent or employee and an officer is not determined by the nature of the work performed, but by the nature of the relationship of the particular individual to the corporation. The principle is well stated in 13 American Jurisprudence, par. 866, p. 854:

> "The relationship of a person to a corporation, whether as officer or

as agent or employee, is not determined by the nature of the services performed, but by the incidents of the relationship as they actually exist. * * * One distinction between officers and agents or employees of a corporation lies in the manner of their creation. An office is created usually by the charter or by-laws of the corporation, while an agency or employment is created usually by the officers. A further distinction may thus be drawn between an officer and an employee of a private corporation in that the latter is subordinate to the officers and under their control and direction."

Many cases have applied this principle. Thus, in Vardeman v. Penn Mutual Life Ins. Co., 1906, 125 Ga. 117, 54 S.E. 66, 67 the court held: "One distinction between officers and agents of a corporation lies in the manner of their creation. An officer is created by the charter of the corporation, and the officer is elected by the directors or the stockholders. An agency is usually created by the officers, or one or more of them, and the agent is appointed by the same authority. It is clear that the two terms officers and agents are by no means interchangeable." In Cosgriff v. Duluth Firemen's Relief Ass'n, 1951, 233 Minn. 233, 46 N.W.2d 250, the court held that even a trustee of a firemen's relief association was not an executive officer. Rosenblum v. N. Y. Central R. R. Co., 1948, 162 Pa. Super. 276, 57 A.2d 690, 691 was a suit for specific performance to compel the New York Central to transfer land on a contract signed by a land agent for the railroad. Written authority was required for contracts in the name of the corporation, except contracts signed by executive officers. The Court held that the land agent was not an executive officer and pointed out that "the executive officers of a corporation are officers of the entity, and not officials merely of the business conducted by the corporation".

The cases to the contrary are cases in which public policy has impelled courts to give a broad interpretation to a state workmen's compensation act or to some other statute charging a corporation with liability for the acts of its officers. The California and Arkansas compensation laws, in the cases cited by appellant, use the term "executive *or managing officer*". In Horst Co. v. Industrial Accident Commission of California, 1920, 184 Cal. 180, 193 P. 105, 109, 16 A.L.R. 611, however, the California court observed that the terms "executive officer" and "managing officer" are not synonymous; that an "executive officer" is elected in accordance with the charter or by-laws; that the statute initially used the term "executive officers" but was amended by adding "managing officer, and has not specified that the officer shall be an elective one * * * [so that it is] clear * * * that the legislature by this section did not use 'officer' in its technical legal sense".

The way in which the complaint is framed—Bruce against Gulf's insurer—tends to obscure the decisive fact that Bruce's claim is against Collins, not against Gulf. The case, therefore, does not depend on the liability of the corporation for the acts of officers nor does it turn on disputed facts as to an officer's delegated authority and whether certain acts were within the scope of the officer's authority. The decision depends on a correct reading of the intention of Gulf and Travelers as they expressed their intention in their insurance agreement, a matter peculiarly within the province of a court. Gulf and Travelers agreed that the extended coverage would apply to executive officers. The best place to look for evidence of that intention is in Gulf's charter and by-laws defining and denominating officers. Appellant concedes that Collins was not an "executive officer", as that term is defined and denominated in the charter and by-laws. Appellant has not offered to prove that the parties intended another meaning. His argument, in effect, is that other persons, members of a jury, might understand "executive officer" differently—by attaching controlling importance to the

fact (undisputed) that Collins had some supervisory duties at the well where the plaintiff was injured. That argument by-passes the intention of the parties and attempts to shift the judicial function from the court to the jury.

## II.

■ Appellant argues that a summary judgment was improper: the jury should decide whether Collins was an "executive officer". Appellant relies strongly on Gianfala v. Texas Co., 1955, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775, rehearing denied 350 U.S. 960, 76 S.Ct. 346, 100 L.Ed. 834, reversing this Court, 5 Cir., 222 F.2d 382.

In that case the Supreme Court held that it was for the jury to decide whether, *under the Jones Act,* 46 U.S.C.A. § 688, Gianfala was a seaman. Whatever far reaching effects the per curiam opinion in Gianfala has on Jones Act cases, it did not eradicate summary judgments. In Texas Co. v. Savoie, 5 Cir., 1957, 240 F.2d 674, 675, this Court said: "[T]he Supreme Court in Texas Co. v. Gianfala, supra, did not intend to do away with the established federal procedure, whereby in a civil action at law the judge may direct a verdict if there is no issue of fact to be submitted to the jury on a decisive issue; * * *." The rationale of the Gianfala case was, for purposes of any implications it might

have on the use of a motion for summary judgment, that the term "seaman", "vessel", and "crew" have no absolute unvarying legal significance under the Jones Act as it is liberally interpreted in the decisions.[2] See Offshore Company v. Robison, 5 Cir., 1959, 266 F.2d 769. Here, however, the preliminary but critical question is the meaning of "executive officer", as used in a contract and in corporate by-laws where there is no question of the term colliding with a broad statutory reference that would make it susceptible of varying meanings depending on the weight attached to selected conflicting facts and inferences. That question is a proper subject for decision on a motion for summary judgment.

Litigants have no difficulty finding expressions urging courts to have a due regard for a cautious observance of the requirements of a summary judgment[3] or, if they are appellees, they may find expressions that summary judgments are looked upon with favor.[4] Barron and Holtzoff, however, make the pertinent observation: "Cases voicing such sentiments as that courts should be slow to grant summary judgment and that any error should be on the side of caution should be limited to their facts. [Rule 56] itself provides that 'the judgment sought shall be rendered forthwith if * * * there is no genuine issue as to any material fact and * * * the moving party is entitled to judgment as a

2. See Senko v. La Crosse Dredging Corp., 1957, 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed. 2d 404, rehearing denied 352 U.S. 931, 77 S.Ct. 716, 1 L.Ed.2d 724; Grimes v. Raymond Concrete Pile Co., 1958, 356 U.S. 252, 78 S.Ct. 687, 2 L.Ed.2d 737, and the four cases cited in the Gianfala per curiam: South Chicago Coal & Dock Co. v. Bassett, 1940, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732; Summerlin v. Massman Construction Co., 4 Cir., 1952, 199 F.2d 715; Wilkes v. Mississippi River Sand & Gravel Co., 6 Cir., 1953, 202 F.2d 383, and Gahagan Construction Corp. v. Armao, 1 Cir., 1948, 165 F.2d 301, 305.

3. "Summary judgment is authorized 'only where the moving party is entitled to

judgment as a matter of law, *where it is quite clear* that the truth is, that no genuine issue remains for trial, and that the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try.' * * * It is no part of the court's duty to decide factual issues but only to determine whether there are issues to tried." Chappell v. Gottsman, 5 Cir., 1950, 186 F.2d 215, 218.

4. This Court has said, "summary judgments are looked upon with favor, and they will be upheld unless there is some general issue of fact". United States for Use of Edward E. Morgan Co. v. Maryland Cas. Co., 5 Cir., 1945, 147 F.2d 423, 425.

matter of law.' " 3 Barron and Holtzoff, Federal Practice and Procedure, § 1231.

Moore states the broad considerations behind Rule 56, Fed.Rules Civ.Proc. 28 U.S.C.A., as follows:

"In its broadest scope the summary judgment procedure is in the nature of a pre-trial inquiry brought on by motion of either a claimant or a defending party for a favorable determination that a trial is unnecessary because there is no genuine issue as to any material fact. * * * Some actions and issues may, as a general rule, be more amenable to a summary adjudication than others, such as actions on written contracts. * * * It can not be stressed too strongly that there is no civil action or issue that is immune to summary adjudication; and when general principles have warranted summary judgment has been rendered in all types of civil actions and on all kinds of issues." 6 Moore's Federal Practice, 2161-3.

Rule 56 is designed for just such a case as is presented by this appeal. The moving party has pierced the allegations in the plaintiff's pleadings. By affidavits, depositions, and the charter and by-laws of the corporation, the defendant has shown that there are no genuine issues of fact to be tried. The non-moving party has failed or is unable to controvert this evidence with affidavits or depositions of his own. He has made no effort to show how he expects to prove his case, contenting himself with the bare allegations in the pleadings that Collins was "invested with the general conduct and control" of reworking a well. This is not enough to create a "genuine issue of material fact" and subject the defendant to the burden of a trial. On the state of the record, there is only a question of law at the threshold that is dispositive of the case. The district court decided properly in favor of the moving party.

The judgment is affirmed.