150 So.2d 595 (1963)
The EMPLOYERS' LIABILITY ASSURANCE CORPORATION, Ltd.
v.
John D. UPHAM, d/b/a Upham Engineering Co., et al. (Consolidated with No. 992).
No. 961.
Court of Appeal of Louisiana, Fourth Circuit.
March 4, 1963.
*596 Drury, Lozes & Dodge, Felicien P. Lozes, New Orleans, for plaintiff and appellant.
Normann & Normann, David R. Normann, New Orleans, for United Benefit Fire Ins. Co., defendant and appellee.
Before McBRIDE, YARRUT and HALL, JJ.
McBRIDE, Judge.
Plaintiff, as workmen's compensation carrier subrogee (LSA-R.S. 23:1101, 23:1162), sues several defendants, among whom is United Benefit Fire Insurance Company, for the aggregate amount of workmen's compensation plaintiff became obligated to pay to two workmen as a result of disabling injuries sustained by them through the alleged negligence of George Shane, who it is averred was "an executive officer of Upham Engineering Company, acting within the scope of his duties." United Benefit Fire Insurance Company is sought to be held liable for Shane's negligence under a policy of comprehensive liability insurance it had issued to "Upham Engineering Company, John D. Upham, Prop.," which policy provides in the "Insuring Agreements":
"Definition of Insured: The unqualified word `insured' includes the named insured and also includes * * * any executive officer, director or stockholder thereof while acting within the scope of his duties as such, * * *."
United Benefit Fire Insurance Company interposed the exceptions of no right or cause of action and also moved for a summary judgment "for the reason there is no genuine issue as to material facts." (See Art. 966 et seq., LSA-C.C.P.) The lower court maintained the exception of no right of action and rendered a summary judgment dismissing plaintiff's suit as against said defendant.
Plaintiff has appealed.
Our opinion is that under the abovequoted portion of the insuring agreements of the policy, such extended coverage would protect any "executive officer" of Upham Engineering Company, though that is merely the trade name of John D. Upham. In support of its exception and motion for summary judgment, United Benefit Fire Insurance Company first argued that the extended coverage was intended to apply only to an executive officer of a corporation which, it is said, is clearly indicated, forasmuch as the term "executive officer" is followed by the words "director or stockholder." We cannot agree with this contention. It is conceivable that Upham Engineering Company, although an unincorporated business name of a sole proprietor, could have an executive officer, and, this being so, if George Shane can be classified as an executive officer of Upham Engineering Company, he would *597 come within the extended coverage. If there be any doubt, uncertainty or ambiguity in the quoted language of the policy, then under Louisiana law such would have to be resolved in favor of the insured and against the insurer.
Plaintiff strenuously contends that George Shane is an executive officer of Upham Engineering Company and that issue is the focal point in the case.
From the depositions and affidavits in the record, we ascertain that Upham Engineering Company is engaged in a general construction business and George Shane was one of the employees, hired as a carpenter foreman, and was under direction of John D. Upham and one Hoppmeyer, General Superintendent. Shane was a member of the local carpenter's union and received the hourly rate of pay for foremen established by the union. When asked if Shane was a "key" man and "necessary," John D. Upham stated:
"Necessary, just as much as the men, the laborers that dig a ditch, you've got to have them there, not key, as far as running in the overall picture of your business. They're assigned to one job and work on that job, they are key as far as that job is concerned."
Shane has been an employee of Upham for about three years. When asked if Upham would refer to him as a superintendent, Shane's reply was:
"He introduces you as his superintendent of the job, but we are actually foremen. When I came to him I was hired as foreman."
Shane admitted there were other persons employed by Upham Engineering Company in the same capacity as he.
The construction of the Bridgedale Baptist Church was discussed, and the evidence shows Shane's duties and responsibilities consisted primarily of laying out the work, assigning the men, and performing some general acts of supervision in connection with the job. He stated that the contract for the Bridgedale Baptist Church job contained an outlined procedure insofar as the written plans and specifications were concerned and that he had no authority either to alter any contract terms or conditions or to change or alter the specified plan of procedure. He reported any unusual or emergent development relative to necessary changes to his supervisor, Hoppmeyer. He further said that Hoppmeyer was the "top man" and was next to Upham in the chain of command. Shane would receive orders either from Upham or Hoppmeyer and "would relay the orders to the other men." If a project happened to be a small one, Shane would join the other employees and work as a carpenter. At the time the accident happened four carpenters and from eight to ten men were in the employ of Upham's organization and if additional laborers were needed, Shane would contact Hoppmeyer who supplied them. He denied that he was president, vice-president, secretary or treasurer, and when asked whether he was a member of the Board of Directors, Shane replied: "No, sir; just a plain foreman."
None of the above facts are in dispute, and these, we think, clearly demonstrate that Shane's connection with Upham Engineering Company was not that of an "executive officer" as we understand the term. He had no managerial authority nor anything to do with the operation of his employer's business, save in the capacity of workmana carpenter-foreman. We agree with what the United States Court of Appeals, Fifth Circuit, said in Bruce v. Travelers Insurance Company, 266 F.2d 781:
"* * * Nor can it be said a tool pusher or a ramrod or a supervisor at a (oil) well location functions in an executive capacity, as `executive officer' is understood in the ordinary acceptance of the term. The term implies some sort of managerial responsibility for the affairs of the corporation generally and it imports a close *598 connection with the board of directors and high officers of the company. * *
"The distinction between an agent or employee and an officer is not determined by the nature of the work performed, but by the nature of the relationship of the particular individual to the corporation. * * *"
We think the exception was correctly maintained and that the motion for summary judgment was properly allowed.
Therefore, the judgment appealed from is affirmed.
Affirmed.