Emra P. GUILLORY et al., Plaintiffs-Appellees,

v.

AETNA INSURANCE COMPANY et al., Defendants-Appellants.

No. 26686.

United States Court of Appeals
Fifth Circuit.

Sept. 11, 1969.

Rehearing Denied Oct. 8, 1969.

Robert L. Kleinpeter, Kleinpeter & Salassi, Baton Rouge, La., for appellant, Aetna Ins. Co.

William B. Baggett, John D. Scofield, Baggett, Hawsey & McClain, Lake Charles, La., for appellees, Emra P. Guillory and Noah Broussard.

Before JOHN R. BROWN, Chief Judge, COLEMAN, Circuit Judge, and SCOTT, District Judge.

SCOTT, District Judge:

Jurisdiction for this action is based upon diversity of citizenship. The plaintiffs-appellees were employees of Beca, Incorporated (Beca), a construction company, and were injured in an accident at a construction site in Lake Charles, Louisiana. They brought this action to recover damages for alleged negligent acts of Alvin Herring, who was employed by Beca. The appellant Aetna had issued a public liability insurance policy to Beca which also afforded coverage to "any executive officer, director, or stockholder * * * while acting within the scope of his duties as such". Alleging Herring to be an "executive officer" of Beca, the plaintiffs joined Aetna as a party defendant under the Louisiana direct action statute. LSA–R.S. 22–655.

Aetna moved for summary judgment, alleging that as a matter of law the defendant Alvin Herring was not an "executive officer" of Beca and, therefore, was not covered under the Aetna policy. The trial court denied the motion.

The facts developed at the trial, viewed in a light most favorable to the appellees, were that Beca was a thinly-capitalized corporation which issued no capital stock, owned no property, kept no minutes, had no by-laws, and whose only contract at the time of the accident was the construction job at which the plaintiffs were injured. Although the corporate minutes were incomplete there was testimony to substantiate the fact that Beca was owned by three stockholders, J. Douglas Smith, Wesley C. Brummel and Mrs. Ellen Moore. Despite inconsistencies in the record about exact ownership figures, it is clear that Brummel had controlling interest or at least voted a majority of the stock. Smith was president of Beca, while Brummel was secretary-treasurer.

Herring was employed to supervise performance of Beca's single contract, the construction of Chateau Lafitte Apartments in Lake Charles, Louisiana.

Herring was never formally elected, appointed or designated as an "officer" of Beca by action of the board of directors or stockholders. Herring did, however, help negotiate the contract to build the apartments.

Brummel executed a written document stating that Herring had general authorization to represent the corporation in matters concerning negotiations, contracts and completion of such contracts. Herring had authority to hire and fire employees and to handle union matters. Herring was authorized to write checks for Beca and he was to receive a portion of any profits from the construction contract.

The trial court denied Aetna's motion for a directed verdict at the close of plaintiffs' evidence, as well as at the completion of the trial. The jury delivered a verdict against the defendants in the amount of $75,000.00. The trial court denied Aetna's motion for new trial and motion for judgment notwithstanding the verdict.

Appellants here argue two points (1) the trial court erred in not ruling as a matter of law that the defendant Herring was not an "executive officer" of Beca acting within the scope of his duties; (2) the trial court incorrectly instructed the jury on the factors to consider in determining whether Herring was an "executive officer".

As this is a diversity case, we must look to the law of Louisiana. Erie Railroad v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938). The appellants contend that this case is controlled by Bruce v. Travelers' Insurance Company, 266 F.2d 781 (5th Cir. 1959), as approved by the Louisiana courts in Employers' Liability Assurance Corp. v. Upham, 150 So.2d 595 (La.App. 4th Cir. 1963) and Thibodeaux v. Parks Equipment Company, 185 So.2d 232 (La.App. 1st Cir. 1965).

*Bruce* upheld the granting of a summary judgment based on a holding that as a matter of law a drilling foreman of a large oil company was not an "execu-

tive officer" within the meaning of the insurance policy. The appellants argue that *Bruce* established that an individual can become an "officer" only if formally designated as such by the corporation and, therefore, because it is undisputed in the present case that Herring was not designated as an officer by Beca Corporation's charter, by-laws or resolutions, the question whether Herring was an "executive officer" should not have gone to the jury.

■ The appellants' argument distorts the *Bruce* decision. In *Bruce* the conclusion that the individual in question was not an "executive officer" was made in reference to his position within "a large oil company having thousands of employees and representatives" and having in its corporate by-laws a specific procedure for electing officers. 266 F.2d at 784. The Court held that under the circumstances of that case no reasonable inference that the well foreman was an executive officer could be drawn. It did not attempt to promulgate an inflexible definition of executive officer. As Judge Wisdom stated, "The distinction between an agent or employee and an officer is not determined by the nature of the work performed, but by the nature of the relationship of the particular individual to the corporation", and "The term [executive officer] implies some sort of managerial responsibility for the affairs of the corporation generally and it imports a close connection with the board of directors and high officers of the company". 266 F.2d at 784. Unlike the drilling foreman in *Bruce,* Herring was shown to have considerable managerial responsibility and a close connection with the president and secretary-treasurer of Beca. Unlike the corporation in *Bruce,* Beca, Incorporated, did not endeavor to formally designate certain officials as executive officers.

Likewise the *Upham* and *Thibodeaux* cases involved individuals with considerably less responsibility. In *Upham* the Court stated that the person in question "had no managerial authority nor anything to do with the operation of his employer's business, save in the capacity of workman—a carpenter-foreman". 150 So.2d at 597. In *Thibodeaux* the Court stated:

"The record further shows that the sole duties of Patton were in an engineering capacity and that he had nothing whatever to do with general or over-all management of the company nor in shaping the policies of the company and neither was he a stockholder or a director. Jenkins on the date of the accident, and prior thereto, was the shop foreman whose sole duty with the corporation was foreman of one of the bays in the manufacturing plant and neither did he have anything to do with the over-all or general operations of the company nor with the shaping or formation of the policies of the company. Both were employees whose managerial duties were limited to their respective departments". 185 So.2d at 241.

In the recent case of Lemmons v. Zurich Insurance Company, 403 F.2d 512 (5th Cir. 1968), affirming a granting of summary judgment by the District Court on a question of whether a particular employee was an executive officer, the Court noted that the *Bruce* holding may have limited application. The Court stated: "The holding in Bruce would be applicable to other corporations with *large numbers of employees* and with great responsibility". (emphasis supplied) 403 F.2d at 514.

Moreover, we think that the term "executive officer" is ambiguous. Certainly, if Aetna meant to insure only "corporate officers", elected or appointed through established procedures, it could have simply said just that. Apparently the term "executive officer" was meant to cover something more than just "corporate officers". But what? It is established in Louisiana law that ambiguous language in an insurance policy should be interpreted against the insurer, who draws the contract in most cases. Godfrey v. United States Casualty Company, 167 F.Supp. 783, 791 (W.D.La.1958); Edwards v. Life & Casualty Insurance

Company, 210 La. 1024, 29 So.2d 50 (1946); Parks v. Hall, 189 La. 849, 181 So. 191, 193 (1938).

Given the relatively small number of persons associated with Beca, the lack of formal corporate procedure and the expanded managerial functions of Herring, we believe that the facts are sufficiently different from *Bruce* that it cannot be said as a matter of law that Herring was not an "executive officer". Under these circumstances, the issue of whether Herring was an executive officer properly went to the jury. Planter's Manufacturing Company v. Protection Mutual Insurance Company, 380 F.2d 869 (5th Cir. 1967), cert. denied 389 U.S. 930, 88 S.Ct. 293, 19 L.Ed.2d 282; Boeing Company v. Shipman, 411 F.2d 365 (5th Cir., April 7, 1969).

■ The question whether Herring was acting within the scope of his duties as an executive officer was also properly submitted to the jury. The accident occurred while Herring, who was on the job site in his capacity as a Beca official, caused a rafter upon which the employees were working to give way. Herring's broad managerial responsibility included on site supervision, and while the act of negligence was not a supervisory act, it appears to have been reasonably incident to his supervisory duties as an executive officer. Whether the phrase "in the scope of" his duties included activities reasonably incident to his duties appears to be a proper matter for jury determination.

■ Aetna raises two objections to the Court's charge to the jury. First, it claims the charge failed to track the language of *Bruce*, in that it did not state that an individual can become an officer of a corporation only if so designated or denominated as such in the articles of incorporation, the by-laws or corporate resolution. This contention ignores the fact that *Bruce* stated that "an officer is created *usually* by the Charter or By-Laws * * *" 266 F.2d at 781. In the present case the Court charged that "The best place, as a general rule, to look

for evidence of [who is an executive officer] would be the charter of the corporation. * * *" Second, the appellants object to the portion of the charge which stated "it is not always necessary either to show the authority of an officer of a corporation by a resolution of its Board of Directors". Taken in context, this charge was proper. Beca had no records or by-laws and conducted no meetings. It had originally been formed by strangers to the present litigation and when it was purchased by the two individuals who owned the corporation at the time of the accident its charter was not changed to reflect the change in ownership. In light of Beca's loose methods of operation, it was consistent with the rationale of *Bruce* to charge that normal corporate formalities were not decisive in determining whether Herring was an executive officer within the meaning of the insurance contract.

No reversible error having been shown, the judgment is affirmed.