240 So.2d 243 (1970)
Hollis BERRY, Jr., Plaintiff-Appellee,
v.
AETNA CASUALTY & SURETY COMPANY et al., Defendants-Appellants.
No. 11437.
Court of Appeal of Louisiana, Second Circuit.
June 29, 1970.
On Rehearing October 13, 1970.
Writ Refused November 9, 1970.
*244 Lunn, Irion, Switzer, Johnson & Salley, by Richard H. Switzer, Shreveport, for defendants-appellants.
Pugh & Nelson, by Sydney B. Nelson, Shreveport, for plaintiff-appellee.
Feist, Schober & Gray, by Malcolm Feist, Shreveport, for defendant-appellee.
Before BOLIN, PRICE and WILLIAMS, JJ.
BOLIN, Judge.
Plaintiff seeks to recover damages for personal injuries sustained in an accident occurring during the course and scope of his employment as an electrician with Libbey-Owens-Ford Glass Company. Named as defendants are C. W. Goldsby, operator of a fork lift truck, and two of his insurers; James E. Mambourg, plant manager; Curtis Davis, Jr., vice-president in charge of the Window Glass Division; Melvin Burwell, vice-president in charge of Employee Relations; and Aetna Casualty & Surety Company, comprehensive liability insurer for all executive officers of Libbey-Owens-Ford Glass Company, alleged to include Dale H. Kuhlman, personnel director of hourly employees and safety officer, as well as Mambourg, Davis and Burwell. C. W. Goldsby's insurers obtained summary judgments in their favor prior to trial, affirmed by this court in 221 So.2d 272. Following trial on the merits the jury returned a verdict in favor of C. W. Goldsby, the correctness of which is not disputed on this appeal. Judgment was rendered in favor of plaintiff against Aetna Casualty & Surety Company as the insurer *245 of Mambourg, Davis, Burwell and Kuhlman and against James E. Mambourg, Curtis Davis, Jr. and Melvin Burwell in solido in the amount of $450,000, less a credit in favor of Aetna Casualty & Surety Company for all workmen's compensation paid by it to plaintiff. From this judgment all defendants, except C. W. Goldsby, have appealed.
On December 15, 1967, while working in his capacity as an electrician for Libbey-Owens-Ford Glass Company, plaintiff was ordered to replace large overhead light bulbs in the warehouse. Defendant Goldsby was assigned to drive a battery-powered electric fork lift truck. Attached to this truck was a large metal cage in which plaintiff was to stand in order to change the bulbs. The rectangular cage rested on four metal legs, and to each leg was welded a rectangular piece of channel iron. The prongs of the fork lift could thus be inserted through these rear rectangular channel irons and partially through those toward the front of the cage. By means of a safety chain with an open-end hook the rear legs of the cage were fastened to the fork lift truck.
After changing some 50 to 60 bulbs, Goldsby began a backing maneuver, lowering the cage partially to clear a steel beam. Plaintiff ducked as the cage passed under the beam and upon arising noticed the cage was headed directly toward an overhead electric fan. Plaintiff yelled to Goldsby to stop, and Goldsby immediately released the lever which controls the brakes on the fork lift. However, the fork lift failed to stop in time to avoid a collision between the cage and the overhead fan. As a result of the collision, the safety chain came off causing the basket to slide forward. The front channel irons being free of the prongs, the rear channel irons broke due to the combined weight of the cage and its contents. The cage fell forward off the fork lift truck throwing plaintiff onto the floor of the warehouse resulting in the serious injuries for which he brings this suit.
Defendants assert ten errors on the part of the trial court which can be summarized into five issues on this appeal:
I. Who are executive officers and thereby insureds under Aetna's Comprehensive liability policy?
II. Is plaintiff's action against the executive officers excluded from coverage under the insurance policy?
III. What is the liability of executive officers of a corporation toward an employee of the corporation?
IV. Are any of these defendants liable for plaintiff's injuries?
V. Did the jury abuse its discretion as to the quantum of damages awarded the plaintiff herein?
The resolution of some of the issues may pretermit the necessity of considering others. However, because we think this case has great legal significance, we shall discuss them all except quantum.
The liability policy in pertinent part defines an insured as:
"The unqualified word `Insured' includes the named Insured and also includes (1) under Coverages C and D, any executive officer, director or stockholder thereof while acting within the scope of his duties as such * * *"
Defendants concede that Davis and Burwell, being vice-presidents of Libbey-Owens-Ford Class Company, are unquestionably executive officers and therefore insureds under the policy. However, defendants contend that Mambourg and Kuhlman are not executive officers of the corporation.
In Bruce v. Travelers Insurance Company, 266 F.2d 781, 784 (CCA 5th, 1959), the court stated:
"The term [executive officer] implies some sort of managerial responsibility *246 for the affairs of the corporation generally and it imports a close connection with the board of directors and high officers of the company."
The above language has been quoted with approval by the Louisiana courts. Employers Liability Assurance Corporation v. Upham, 150 So.2d 595 (La.App. 4 Cir. 1963); Thibodeaux v. Parks Equipment Company, 185 So.2d 232 (La.App. 1 Cir. 1965).
It is clear the term "executive officer" covers something more than, and is not restricted to, "corporate officers". If not, certainly the insurance company which drew up the contract would have used that terminology. Guillory v. Aetna Insurance Company, 415 F.2d 650, 652 (CCA 5th, 1969).
Mambourg's testimony reflects he was plant manager of the Shreveport plant of Libbey-Owens-Ford from August 1965 until his retirement on June 23, 1969. He was the man in charge of all employees, totaling from 550 to 650. Under Mambourg were numerous department heads who reported directly to him. Under each department head there was a foreman or supervisor, following which were one or two shift superintendents. Lastly, there were the hourly laborers. Mambourg had the overall responsibility for the management of the plant. His immediate supervisor was C. W. Davis, Jr., vice-president in charge of Window Glass, whose primary duties consisted of supervising the operations at the Shreveport plant and the other window glass plant in West Virginia. Mambourg had the authority to fire an employee at the local plant, although he ordinarily consulted Davis before doing so.
We conclude that since Mambourg was directly under a corporate officer, Davis, and participated in the formulation and execution of company policy with respect to all areas of production at the Shreveport plant, he was an executive officer of the corporation within the terms and provisions of the insurance policy.
Kuhlman's testimony shows he is personnel director of Hourly Employees, his duties encompassing safety, first-aid, employment and recreation for all eleven plants of the corporation. Kuhlman's immediate supervisor is Melvin Burwell, vice-president in charge of Employee Relations. His duties involve responsibility for the safety of all the hourly employees of the corporation generally, and his position is one closely connected with the officers of the corporation at the home office in Toledo, Ohio. Although not a corporate officer, he is an executive officer and an insured under the policy.
Since we are of the opinion that Mambourg and Kuhlman, as well as Davis and Burwell, were factually and legally executive officers within the terms of the policy, this pretermits the necessity of determining whether or not the question should have been submitted to the jury or left to the court.
Defendant Aetna contends the policy extends no coverage because of the following exclusionary clause:
"This policy does not apply: (d) under Coverages A and C, to any obligation for which the Insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law; * * *"
Defendants' argument was rejected by the trial court. In his reasons for refusing to grant a motion for summary judgment the judge stated:
"Now, Libbey-Owens-Ford Glass Company is not a defendant in this case. Had they been sued, there would be no liability in tort on Libbey-Owens-Ford Glass Company under the Louisiana law, since plaintiff, Berry, will be restricted to asserting his right under the Workmen's Compensation law. Nor would Aetna be liable since coverage is excluded under an exclusion which is known as Exclusion (d). Now, Burwell and Davis and *247 Mambourg and Kuhlman were not and are not insurers who could be held liable under the workmen's compensation law for Berry's injuries. Therefore, Exclusion (d) has no application as to them."
We conclude the quoted portion of the decision of the district court was correct. While we have not been cited a Louisiana case dealing with the same exclusionary clause as the one herein, plaintiff has called our attention to the case of Curran Development Company v. Security Insurance Company, 194 F.Supp. 727 (W. D.Ark.1961), in which the court reached the same result as the trial court in this case. The reasoning in Curran is in accord with the policy of the Louisiana courts to construe strictly exclusionary clauses against the insurer. Bezue v. Hartford Accident & Indemnity Company, Hartford, Connecticut, 224 So.2d 76, (La. App. 1 Cir. 1969) Wilks v. Allstate Insurance Company, 195 So.2d 390, (La.App. 3 Cir. 1967); Commercial Union Insurance Company of New York v. Hardcastle, 188 So.2d 698, (La.App. 2 Cir. 1966).
Defendants argue an officer, employee or agent of a corporation is not personally liable to a third party except for malfeasance and there is no liability on the part of such officer, employee or agent to a third party for acts of misfeasance or nonfeasance. However, we do not find the authorities cited by defendants applicable to the facts of this case. To the contrary, plaintiff relies heavily on Adams v. Fidelity and Casualty Company of New York, 107 So.2d 496, 501-502, (La.App. 1 Cir., 1958-writ denied), which held:
"We agree with defendant's argument that the breach of a legal obligation by corporate officers due and owing only to the corporation, whether it be misfeasance, malfeasance or nonfeasance, is no concern of a third party and does not give rise to any cause of action by the latter, against corporate officers. On the other hand, an injury suffered by a third party which is due to the breach of a legal obligation which the corporate officer or officers owed to the third party, whether it also involved the breach of a duty due to the corporation, would give rise to a cause of action against the corporate officers for the breach of such legal obligation. It would matter not whether the breach of a legal obligation due and owing by a corporate officer to a third party (which would include a co-employee) was the result of misfeasance, malfeasance or nonfeasance.
* * * * * *
We do not believe that any of the authority cited by the defendant can be interpreted as holding the corporate officer free from any liability for the violation of a legal obligation due and owing to a plaintiff where the latter's injury is traceable to such breach by the corporate officer. Whether the breach is due to misfeasance, malfeasance, or nonfeasance, is immaterial and beside the point. Just so there is the breach of an individual obligation by the corporate officer due to a party and as a result of such a breach, the latter is injured, would be sufficient to give rise to a cause of action by the injured party against the corporate officer.
"We can see no valid or logical reason for denying a plaintiff a cause of action for nonfeasance, as well as for misfeasance and malfeasance, if the nonfeasance was an omission by the defendant to perform a legal duty which he owed the party allegedly injured and because of his failure to act the party was injured, whether the guilty defendant be a director, officer or agent."
Whether the acts of an executive officer amount to malfeasance, misfeasance or nonfeasance is immaterial. Plaintiff must show negligence on the part of one or more of the defendants as provided in Louisiana Civil Code Articles 2315 and 2316, the basic authority for such claims in this State. Plaintiff must show the breach of a duty owed to him by the executive officer, *248 and that the breach of such constituted a proximate cause of plaintiff's injury. Adams v. Fidelity and Casualty Company of New York, supra; Thibodeaux v. Parks Equipment Company, supra; Boudreaux v. Falco, 215 So.2d 538 (La.App. 1 Cir. 1968).
Plaintiff contends the basket was unsafe for the purpose for which it was used, in that the forks did not extend far enough through the front channel irons, and the safety chain secured by an openend hook was inadequate. In this connection plaintiff called two expert witnesses, Arthur D. Kaiser and John Joris, both of whom are safety representatives employed by liability insurers. Kaiser was of the opinion the basket was unsafe, based primarily on the premise that people should never be allowed to ride on or be raised upon a fork lift truck. He admitted on cross examination that he was reasoning back from the accident in concluding the basket was unsafe. Joris was of the opinion the basket was unsafe because something was needed to stop the sliding action of the basket.
We reason from the foregoing testimony that if the fork lift truck has adequate brakes, and the basket is lowered when the fork lift truck is in motion, then the basket is not unsafe for the purpose for which it is used by the company. In other words, the fork lift truck with the attached steel basket was not inherently dangerous for all uses. Since the basket was dislodged from its otherwise safe position as a result of the collision with the fan, we must look to the cause of the collision.
Plaintiff contends the proximate cause of the collision was that the brakes on the fork lift truck did not function properly due to inadequate preventive maintenance programs followed at the plant which were particularly within the knowledge of the four executive officers. The evidence shows the maintenance crew worked on a five day work week from Tuesday through Saturday, but sometime prior to the accident their work week was changed to the usual five day week of Monday through Friday. There is no dispute but that the work week was changed for economic reasons inasmuch as the crew was being paid time and a half on Saturday. However, plaintiff argues the trucks were not in use on Saturdays and were readily available to the maintenance crew. But on the new schedule the trucks were always in use when the maintenance crew was on duty and, therefore, were not available to be checked and maintained in a safe condition. Plaintiff further contends the men in the plant had complained of this change in the maintenance schedule on several occasions during meetings between management and the union and offered into evidence a list of sixteen grievances submitted to management at one of these meetings.
Whether or not the brakes were functioning properly is a disputed issue of fact in this case. In addition, Goldsby's testimony, that the basket was four to five feet from the fan traveling at a speed of eight or nine miles per hour when he attempted to apply the brakes, indicates the accident might not have been avoided with excellent brakes. The evidence shows an object traveling ten miles per hour covers a distance of fourteen feet per second.
Assuming, arguendo, that the brakes did not function properly, and if they had, Goldsby would have had sufficient time to stop the fork lift truck and avoid the collision, we are unable to hold any one of these four executive officers negligent. First, there is no evidence of any complaints made to them of bad brakes on the fork lift trucks apart from complaints of a general nature concerning all the vehicles at the plant. Second, plaintiff's own witnesses admitted the maintenance men desired to return to the old schedule primarily in order to make time and a half on Saturday. Third, if there was any problem with equipment, the speed and efficiency of all the men were adversely affected, resulting in decreased *249 earnings under the bonus program existing at the plant. Therefore, the men wanted a maintenance crew on Saturday. In summary, the substance of the grievances submitted to management was a question of money and not safety.
Since we have found no negligence on the part of Mambourg, Burwell, Davis or Kuhlman, there can be no recovery in tort by the plaintiff in this case. Having decided plaintiff's demands should be rejected for failure to prove negligence against defendants, the question of contributory negligence need not be considered. However, as it was pleaded by defendants we choose to pass on it. If plaintiff had requested the basket be lowered whenever the fork lift truck was in motion, this unfortunate accident could have been avoided. This negligence was a contributing cause of the accident and is an additional reason why plaintiff's demands should be rejected.
For the reasons assigned, the judgment appealed is reversed, and there is now judgment in favor of defendants rejecting the plaintiff's demands at his cost.

ON REHEARING
Before AYRES, BOLIN, DIXON, PRICE and WILLIAMS, JJ.
DIXON, Judge.
On rehearing plaintiff reiterates his contentions concerning the negligence of defendants. The accident which injured the plaintiff occurred when the driver of a forklift truck carrying the basket occupied by the plaintiff backed it into a fan suspended from the ceiling.
The record does not support a finding that negligent acts of the plant manager or other executive officers of Libbey-Owens-Ford Company caused the accident. Plaintiff reurges that R.S. 40:1672 is applicable, and creates a sort of absolute liability. R.S. 40:1672 states:
"All scaffolds, hoist cranes, stays, ladders, supports, or other mechanical contrivances erected by any person for use in the erection, repairing, alteration, removing, or painting of any building, bridge, viaduct, or other structure shall be constructed, placed, and operated so as to give proper and adequate protection to any person employed or engaged thereon or passing under or by it, and in such a manner as to prevent the falling of any material that may be used or deposited thereon."
Two Louisiana cases have stated that the intent of the statute was "to impose a strict liability on persons who erect scaffolds and other contrivances." Barilleaux v. George D. Mattix, Inc., La.App., 202 So.2d 461 and Kempff v. B. E. King & Sons, Inc., La.App., 222 So.2d 921. In neither case was the statement concerning strict liability essential to the decision. There is no indication in the statute itself that its object is to impose absolute liability on the fabricator of a scaffold or hoist when it is involved in an accident. We do not find that the construction of the basket used in the instant case in any way violated the provisions of the statute.
Therefore, our previous opinion is reinstated. The judgment of the district court is reversed, and there is now judgment in favor of defendants rejecting the plaintiff's demands at his costs.
PRICE, Judge (concurring).
I concur in the result of the majority opinion, but for reasons different from those expressed in the original opinion of the court and the opinion on rehearing.
I am not in accord with the rationale in our original opinion wherein we state: "Since the basket was dislodged from its otherwise safe position as a result of the collision with the fan, we must look to the cause of the collision." The injury to Hollis Berry, Jr. was not caused in the legal sense by the collision with the fan, but *250 rather by the fall of the cage to the floor of the warehouse as a result of its defective (and unsafe) design. Had the design of this cage met reasonable safety standards, this injury would very probably not have been suffered despite the encounter with the fan, as the cage would not have fallen.
In this opinion we further declared: "We reason from the foregoing testimony that if the fork lift truck has adequate brakes, and the basket is lowered when the fork lift truck is in motion, then the basket is not unsafe for the purpose for which it is used by the company. In other words, the fork lift truck with the attached steel basket was not inherently dangerous for all uses." Despite this assertion, the steel basket apparently was not safe for the use to which it was put. The very heavy cage was used in a warehouse for replacing light bulbs, and collision should not be completely unforeseeable. Testimony reveals that normally, folk lifts may be safely driven with properly designed baskets elevated to a height of four feet yet the identical injury could have occurred upon collision even with the basket at such a low level, due to the great weight of the cage.
Since the cage was defective, a safety statute was breached (R.S. 40:1672), and this constitutes negligence per se on the part of the person who "erected" it.
Although I disagree with the foregoing conclusion of the court, I am in accord with the ultimate decision reached, for the following reasons. The plaintiff has failed to show independent negligence on the part of the officers of the corporation which would justify their concurrent liability in tort. Executives are not susceptible to tort damages merely by virtue of their corporate position.
Mambourg did not breach any duty owed to his employees in instructing the plant engineer to have the cage designed and builtto the contrary, the testimony reveals that the contrivance was perfectly safe after the modification which, unfortunately, followed Hollis Berry's accident. Any liability for the defective design should fall upon the shoulders of the plant engineer, who had the training and responsibility in such planning and construction. Mambourg was not, in my opinion, negligent at all in appointing the apparently appropriate person to do the job which he had been hired to do.
I find it difficult to extend liability to any of the other corporate officers. Certainly, the poorly managed, almost non-existent safety program constituted negligence on the part of the officer in charge of safety; but I think his inaction constitutes a breach of a general duty owed by him to the corporation rather than of an individual responsibility to the plaintiff-employee many echelons below him. To allow Hollis Berry, Jr. to recover on such a general premise would in effect undermine the purpose of the Workmen's Compensation Act, as in every compensable accident, the safety director or his counterpart could be declared negligent and sued in tort despite recovery against the corporation under the Act. In this same vein, the injured employee could also concurrently sue the president of the corporation for not instituting an effective program; the general manager for failing to discover the defect; supervisors for negligence in evading their responsibility; etc., ad infinitum. The corporation would become an aloof entity, with each member of its executive, managerial and supervisory staff falling prey to continuous suits.
In the more recent cases dealing with the separate tort liability of officers and directors of corporations, the tendency of the courts is to discard language of nonfeasance, misfeasance and malfeasance, and to instead resort to the reasoning used in every tort case; to first determine whether a duty to the injured employee existed on the part of the officer, and then to query whether a breach of this duty caused the injury. This is also the view utilized in the Adams case [Adams v. Fidelity and Casualty Company of New *251 York, 107 So.2d 496 (La.App. 1 Cir., 1958)], and espoused in 19 Am.Jur.2d Corporations, Sec. 1388:
"One proper method of approach is to inquire whether the director, officer, or agent has failed to perform some duty which he owed to the person claiming to be aggrieved. In the determination of such liability the questions to be decided are: (1) Was there any duty on the part of the director, officer, or employee to use care not to injure the third person involved? (2) Did the act or omission of the director, officer, or employee constitute a breach of that duty? In accordance with these inquiries, the rule accepted in principle by the authorities is that a director, officer, or employee of a corporation is liable to third persons for injuries proximately resulting from his breach of duty to use care not to injure such persons, whether that breach is one of omission or commission. On the other hand, a director, officer, or employee of a corporation is not liable for injuries to third persons if he has been guilty of no act or omission causing or contributing to such injury, or if he owes no duty to such third person to use care, such as where the breach of duty complained of is one owing only to the corporation."
In Adams, the executive officers who were held liable in tort after a compensation recovery by the employee actually knew of the dangerous condition which caused the injury before the accident occurred. A duty to remove the condition arose with their knowledge of its existence. The plaintiff in the Adams case also sued the president and general manager of the corporation, who was unaware of the danger, in an attempt to impute to him the negligence of his subordinates, to which the court replied after sustaining an exception of no cause of action: "There is no allegation of fact charging this defendant with nonfeasance, misfeasance, or malfeasance nor with any breach of duty toward the decedent or any third person." Thus the court refused to hold this executive liable merely on the basis of his corporate position. He owed no individual duty to the plaintiff. For a very comprehensive and scholarly discussion of this area of tort liability, see Miller v. Muscarelle, 67 N.J. Super. 305, 170 A.2d 437 (1961).
In the instant case, no individual duty was owed the plaintiff by the executives against whom he brought suit. None was aware of the dangerous condition created by the faulty design of the cage.
For these reasons I do not think they should be cast in judgment.