HALL, Judge.
In this suit Hollis Berry, Jr., seeks to recover from his employer’s compensation insurance carrier, Aetna Casualty & Surety Company, certain medical expenses allegedly incurred by him in connection with treatment for injuries received in an on-the-job accident, together with penalties and attorney’s fees. The medical expenses included therapy treatments by a podiatrist, treatment by an internist and the cost of drugs prescribed by the podiatrist and the internist. Defendant denied the therapy treatments were necessary or helpful and alleged they were actually detrimental to plaintiff. Defendant denied the examination by the internist or the drugs prescribed were in any way connected with plaintiff’s on-the-job injuries.
After trial on the merits the district court rendered judgment in favor of plaintiff for all items claimed in the amount of $1,214.08, plus an equal amount as penalties, and attorney’s fees in the amount of $500, together with legal interest on the amount due from date of judicial demand until paid and all costs. Defendant appealed.
Plaintiff was seriously injured on December 15, 1967, in an accidental fall from a forklift truck at the plant of his employer, Libbey-Owens-Ford Glass Company.[1] On the day of the accident there was in full force and effect a policy of workmen’s compensation insurance issued by defendant, Aetna, which policy contained a $100,000 excess medical expense endorsement.
In the accident, the heel bone of plaintiff’s foot was severely fractured requiring surgery on at least two occasions. In addition to the foot injury, plaintiff sustained multiple fractures of his pelvis and of his spinal cord which also required surgery. Plaintiff also sustained serious internal injuries. Plaintiff has been under treatment of various physicians since the date of the accident. At the date of the trial defendant was paying plaintiff workmen’s compensation benefits on the basis of total and permanent disability and had paid $5,915 in benefits and $14,490.14 for medical expenses.
This suit arises out of defendant’s refusal to pay medical expenses incurred for (1) physical therapy treatments by Dr. Denny E. Gamble, a podiatrist, from August, 1970, to the date of trial, March 16, *432 1971, in the amount of $1,011, (2) services rendered by Dr. D. E. Russell, an internist, on November 11, 1970 and January 21, 1971, in the amount of $33, and (3) drug bills from November 12, 1970 to the date of trial in the amount of $170.08, or a total of $1,214.08.
The evidence discloses that plaintiff was originally referred to Dr. Gamble and Dr. Russell for treatment by his principal treating physician, Dr. Ray E. King, an orthopedic specialist. For more than two and one-half years plaintiff received treatment from Dr. Gamble and Dr. Russell and defendant paid all bills for treatment and for drugs prescribed by the two doctors. The treatment received and the bills submitted, which are the subject of this suit, were of the same nature as those previously paid by defendant. The bills which are the subject of this suit were submitted for payment in accordance with the procedure followed over a long period of time but were not paid by defendant in spite of repeated written demand and suit was filed in January, 1971.
Defendant opposes payment of Dr. Gamble’s bill on the grounds that the treatment was not necessary, had no beneficial effect, and was actually detrimental to plaintiff. The treatment by Dr. Gamble, a licensed podiatrist, consisted primarily of ultrasonic therapy and injections of vitamin B-12. Dr. Gamble testified he had owned and used ultrasonic equipment in the treatment of thousands of patients since the early 1950’s. It was his opinion that plaintiff benefited from the treatment, particularly in that it relieved plaintiff’s pain resulting in plaintiff being required to take less pain-killing medication. Plaintiff testified the treatments he received from Dr. Gamble gave him relief from pain.
The only evidence submitted by defendant to show plaintiff did not need the treatment prescribed and administered by Dr. Gamble was the testimony of Dr. William W. Fox, III, an orthopedic specialist. Dr. Fox examined plaintiff on one occasion after suit was filed. Dr. Fox expressed. his opinion that the ultrasonic therapy was not beneficial to plaintiff and such treatment should not be continued over long periods of time. He was of the opinion that such treatment was actually detrimental and contraindicated. Dr. Fox also expressed the opinion that the prolonged use of vitamin B-12 was of no benefit in this type of case or in any type of post traumatic snydrome. Dr. Fox conceded that his knowledge of ultrasonic treatment was limited and his opinion was based, to some extent, upon conversations he had with two physical therapists. As the trial judge correctly noted, Dr. Fox’s main concern seemed to be with the fact that the treatment was prescribed by a podiatrist rather than a medical doctor.
We hold that the preponderance of the evidence is to the effect that the treatment rendered by Dr. Gamble was in connection with the foot injury received in the accident, was reasonably necessary and beneficial to plaintiff and defendant is obligated to pay the cost of such treatment under its workmen’s compensation policy with excess medical expense coverage.
Dr. Russell testified he has been treating plaintiff for numerous complaints and symptoms since he was called into the case by Dr. King shortly after plaintiff’s accident. The bills in question were for an office visit and blood count on November 11, 1970, and laboratory work and examination on January 21, 1971. In November, plaintiff was treated for complaints of severe cramps in the leg, back and leg pain and fatigue after limited activity. In January, plaintiff was treated for headaches, pain in his leg and numbness in his hand. Although Dr. Russell testified it could not be stated with certainty, he assumed these complaints and symptoms had some relationship to the accident and were consistent with the type injuries plaintiff sustained. There was no evidence to the contrary.
We find this treatment by Dr. Russell to have been reasonably necessary and related to plaintiff’s accident and resulting injuries.
*433 Plaintiff is likewise entitled to recover for the various drugs and medication prescribed by Dr. Gamble and Dr. Russell in connection with their treatment of him.
On the issue of penalties and attorney’s fees, the evidence discloses that defendant’s adjuster elected to stop authorizing payment of these bills without any advance notice to plaintiff and without investigation into the necessity or beneficial nature of the treatment. In his oral reasons for judgment dictated into the record, the trial judge correctly held:
“It appears that without any examination the adjuster suddenly decided on his own to stop payment of the claim submitted. This was done without any medical evidence whatsoever or anything other than a lay opinion to support his action. We feel that the action of the defendant was arbitrary, and without any basis and reasonable grounds for failure to pay the medical payments.”
The trial judge awarded penalties of double the amount due and attorney’s fees of $500, apparently under LSA-R.S. 22:657. In plaintiff’s original petition, it was alleged that the policy issued by defendant was a health and accident policy and that plaintiff was entitled to penalties and attorney’s fees under LSA-R.S. 22:657, which deals with failure to pay claims under “health and accident contracts.” At the trial, the policy was not offered into evidence but it was stipulated the policy was not a health and accident policy but was a workmen’s compensation policy with excess medical coverage. Thus, the applicable statute is LSA-R.S. 22:658 which deals with insurers issuing contracts other than life and health and accident and which has consistently been applied to workmen’s compensation insurers. Even though the policy involved here provides for medical expense coverage in excess of the statutory maximum specified in the workmen’s compensation law, it is still workmen’s compensation insurance and not a health and accident contract. LSA-R.S. 22:6 defines health and accident insurance and workmen’s compensation insurance separately and distinctly. That a workmen’s compensation insurance policy with excess medical expense coverage is not a health and accident policy is made clear by LSA-R.S. 22:221 which provides that nothing in the part of the Insurance Code dealing with health and accident insurance shall apply to or affect “any policy of workmen’s compensation insurance . . . with or without supplementary expense coverage therein;”.
The penalty provided by LSA-R.S. 22:658 is twelve per cent of the amount of the claim, and in this case would amount to twelve per cent of $1,214.08, or $145.69.
For the reasons assigned, the judgment of the district court is hereby amended to reduce the penalty awarded from double the amount of the principal award to twelve per cent of the amount of the principal award, or $145.69. As so amended, the judgment is affirmed. Costs of the appeal are assessed against defendant.
Amended, and as amended, affirmed.

. In a previous suit arising out of the same accident, this Court reversed a jury verdict in plaintiff’s favor and rejected his demands for damages against a co-employee, executive officers of the employer corporation, and their insurers. See Berry v. Aetna Casualty & Surety Company, 240 So.2d 243 (La.App.2d Cir. 1970), writ ref. 256 La. 914, 240 So.2d 374 (1970), cert. den. 401 U.S. 1005, 91 S.Ct. 1255, 28 L.Ed.2d 541 (1971).