251 So.2d 414 (1971)
Steve CHABINA
v.
The TRAVELERS INSURANCE CO. et al.
No. 8489.
Court of Appeal of Louisiana, First Circuit.
July 16, 1971.
Rehearing Denied September 2, 1971.
Writ Refused October 21, 1971.
W. S. McKenzie, of Taylor, Porter, Brooks & Phillips, Roy Maughan, Baton Rouge, for appellant.
Ashton Stewart, Laycock & Stewart, Baton Rouge, Perry J. Smith, Gonzales, Tom Matheny, of Pittman & Matheny, Hammond, for appellees.
Before LANDRY, ELLIS and BLANCHE, JJ.
ELLIS, Judge.
Plaintiff Steve Chabina was injured while in the course and scope of his employment with Boh Brothers Construction Company, Inc. on January 24, 1966. This is a tort suit for damages arising out of the accident. Defendants herein are Wilton Breaux, a fellow employee; Vernon C. Johnson, plaintiff's foreman; Nelson Ardoin, Sr., job superintendent for Boh; Leonard Guillot, Boh's general superintendent; Arthur P. Boh, Robert H. Boh, Henry Boh, Bingham Stewart, D. E. Guiza, John A. Tedroed, Robert Drueding, *415 Ralph Junius, and James S. Hotard, who are officers, directors and stockholders in Boh Brothers Construction Company, Inc., and Travelers Indemnity Company, as the general liability insurer of the executive officers of Boh Brothers.
Trial on the merits, by jury, was held, and a judgment was rendered pursuant to the verdict, against Bingham Stewart and The Travelers Indemnity Company for $147,166.67. The judgment further was in favor of intervenor, The Travelers Insurance Company, against plaintiff, Stewart and Travelers, for $10,475.00 in workmen's compensation and medical payments made to and on behalf of plaintiff. The suit was dismissed as to all other defendants.
Bingham Stewart and The Travelers Indemnity Company have appealed suspensively from the judgment. Plaintiff has taken a devolutive appeal from that part of the judgment dismissing the suit as to all other defendants, and has answered the appeal of Stewart and Travelers, asking for an increase in the award.
Plaintiff was employed by Boh Brothers as a carpenter. The structure which Boh Brothers was building was a large "E" shaped cell made of reinforced concrete. It measured approximately 60 feet in length, and each of the arms of the "E" were about 25 feet long. When completed, the structure was 35 feet high.
The cells were constructed by first erecting a form 18 feet high around the entire cell and pouring the concrete for that section. When the concrete was sufficiently cured, the same forms were then re-erected around the top of the first section, and the remainder of the concrete poured to give the total 35 foot height. When the accident herein happened, plaintiff was engaged in the assembly of the form along the outer edge of the top arm of the "E". The form had already been erected and braced along the inner side of the arm, and the forms along the outer edge were in place but had not as yet been permanently tied into the inner form.
The forms were assembled from prefabricated sections eight feet wide and 18 feet high, made of ¾ inch plywood nailed to a frame of two by six inch boards. Prior to setting the forms in place, a permanent platform of two by eight inch boards was bolted to the already poured concrete section of the cell, about one foot from the top. The sections were set in place on this platform and were drawn up tight against the concrete by means of band irons. They were then temporarily attached to the inner form at the top, and the sections nailed to each other so as to form the outer wall of the form.
In order to maintain uniform distance between the walls of the form, and to further strengthen the structure, spacers or spreader bars were bolted in place. Large braces, known as "whalers", were toenailed into place across the backs of the forms parallel with the ground. Bolts are then inserted through the whalers and through holes in the plywood, and screwed into the ends of the spreader bars, insuring uniform thickness of the wall. Whalers were installed 30 inches apart from the bottom to top of the forms.
Before the installation of the permanent whalers, the outer form was bolted to the inner form at the top by means of bolts inserted into the spreader bars through a short, temporary whaler. One such bolt was installed in each section of the form. In addition, two by four inch cleats were nailed across the tops of the inner and outer forms.
When plaintiff and his co-worker Wilfred Breaux began work on the day of the accident, the outer form sections were in place, held by the band irons and the platform on the bottom, and the temporary whalers and cleats at the top. Plaintiff and Breaux were instructed to proceed by first toenailing in all permanent whalers except the top one. They were to then install all bolts through the permanent whalers. When this was done, they were to remove the temporary whalers at the top and install a permanent whaler there.
*416 When the accident happened, plaintiff and Breaux were standing on a platform nailed to the form about 30 feet above the ground. The last permanent whaler had been installed by toenailing it in, but no bolts had yet been put in any of the whalers. The outer form suddenly pulled away from the inner form, and fell, carrying plaintiff and Breaux with it. Plaintiff suffered serious injuries as the result of his fall.
After the accident, it was discovered that the bolts through the temporary whalers had been removed. Expert testimony in the record makes it clear that the accident could not have happened had those bolts remained in place, since any one of them was strong enough to support the entire structure.
Other expert testimony shows that there are other procedures to be followed in the construction of such a form which, if followed, would have made it impossible for the accident to have happened. One of these methods contemplates the installation of one or more bolts in each permanent whaler as it is installed, so that it would be impossible for the form to pull loose.
In essence, it is plaintiff's position that the executive officers of Boh Brothers owed a duty to provide plaintiff with a safe place to work, and that, by prescribing unsafe procedures for the construction of the form, they violated this duty.
It is true that an injured employee has a cause of action in tort against the executive officers of his corporate employer, if the officers have breached a duty owed by them directly to the employee. Adams v. Fidelity and Casualty Co. of New York, 107 So.2d 496 (La.App. 1 Cir. 1958); Berry v. Aetna Casualty & Surety Co., 240 So.2d 243 (La.App. 2 Cir. 1970). We think that such officers owe to the employees the duty of providing a reasonably safe place to work, and this duty would preclude the prescribing of unsafe working procedures.
Although several different theories were advanced as to why the accident happened, we find that the form fell because the bolts were removed from the temporary whalers before the permanent whalers were bolted. There is uncontradicted testimony in the record that the bolts were properly installed through the temporary whalers on the day before the accident, and that they were in place on the morning of the accident.
There is testimony by one witness that he saw plaintiff and Breaux removing the bolts just before the accident, which they deny. There is also testimony that when in the hospital immediately after the accident, plaintiff admitted removing the bolts. He denies this as well. There is no other testimony relative to the removal of the bolts.
However, no matter who removed the bolts, the procedure prescribed by Boh Brothers for the construction of the form provided that they remain in place until the permanent whalers were entirely bolted. Had this procedure been followed, there would have been no accident. It follows that the procedure followed by Boh Brothers was not inherently unsafe.
Plaintiff argues that, since safer procedures could have been followed, defendants are negligent in failing to utilize them. In this, we cannot agree. Employers are not required to furnish the safest possible place to work, but one which is reasonably safe. They cannot be required to anticipate or forestall the possible negligence of their employees in carrying out their instructions. We think that plaintiff was furnished a reasonably safe place to work in this case, under the circumstances here presented.
Bingham Stewart, the vice president in charge of heavy construction for Boh Brothers, was the officer who had the overall responsibility for the project in this case, and the only defendant found liable herein. The only act of negligence alleged as to him is that he failed to furnish plaintiff a safe place to work. Since we have found that plaintiff was furnished a safe place to work, the judgment as to him must be reversed. As to the other officers, *417 directors and stockholders of Boh Brothers, the judgment will be affirmed.
The same conclusion must be reached as to plaintiff's claims against Guillot, Ardoin and Johnson. In brief and argument, plaintiff points to no negligence on the part of Ardoin and Johnson, and our review of the record reveals none. He seeks to hold Guillot as an executive officer of the corporation. Assuming, arguendo, that Guillot legally enjoys that status, he cannot be held liable herein, for the reasons hereinabove set forth.
In his brief, plaintiff does not urge his claim as against Breaux, and we assume it has been abandoned.
The judgment appealed from is therefore reversed as to Bingham Stewart and The Travelers Indemnity Company, and there will be judgment herein dismissing plaintiff's suit as to them. In all other respects, the judgment appealed from is affirmed, at plaintiff's cost.
Reversed in part, affirmed in part, and rendered.