Homer **MONTGOMERY**, Plaintiff-
Appellant,

v.

**OTIS ELEVATOR COMPANY** et al.,
Defendants-Appellees.

No. 72–2501.

United States Court of Appeals,
Fifth Circuit.

Jan. 17, 1973.

Peter J. Abadie, Jr., James A. Mc-Pherson, New Orleans, La., for plain-tiff-appellant.

James H. Drury, Robert H. Wood, Jr., New Orleans, La., for Otis.

James F. Holmes, New Orleans, La., for Aschafferburg.

Frederick R. Bott, New Orleans, La., for Continental.

Before GODBOLD, DYER and CLARK, Circuit Judges.

**GODBOLD, Circuit Judge:**

Plaintiff, who was employed as a freight elevator operator by the Pontchartrain Hotel, of New Orleans, sued for injuries allegedly suffered when malfunctioning sliding doors of the elevator injured him. The named defendants were Lysle Aschaffenburg, chairman of the board of the Pontchartrain Hotel Corporation, Albert Aschaffenburg, president of that corporation, and Otis Elevator Company. The District Court granted summary judgment in favor of all defendants. We affirm as to Albert Aschaffenburg, vacate as to Lysle Aschaffenburg, and reverse as to Otis.

On the motion for summary judgment there were before the court the following: (1) The amended complaint, charging negligence by each of the Aschaffenburgs as corporate officers, directors and stockholders acting within the scope of their authority, in ordering plaintiff to operate the elevator when they knew or should have known it was defective and dangerous, and charging failure by Otis "to service the elevator, and/or to repair the defects, which the [sic] knew or should have known existed at the time of the accident." (2) General denials by all defendants plus allegations of contributory negligence on the part of plaintiff. (3) The pretrial order, as supplemented. It set out an alternative defense of the Aschaffenburgs that they had contracted with Otis to repair and maintain the hotel elevators and that if the freight elevator was defective the sole responsibility was on Otis. The order described as one of the contested issues of fact whether Otis failed to properly service the elevator. (4) A statement by Otis' counsel of the material facts with respect to which Otis contended there were no genuine issues to be tried,[1] and a supporting memorandum. The memorandum acknowledged that Otis had a maintenance contract for the hotel elevators. Attached to the statement by counsel was a letter to attorneys from the general service superintendent of Otis stating, *inter alia*: "We were not called to correct any malfunction *as a result of the accident*, nor informed *that an accident had occurred* until six months after the elevator operator claims injury." (Emphasis added.) The same letter stated that normally the doors of the freight elevator were manually opened by the operator and closed through the use of a spring-operated closer when released by the operator. (5) The deposition of plaintiff. (6) The deposition of Charles Giordano, superintendent of services of the hotel (7) Affidavits of Lysle and Albert Aschaffenburg disclaiming any knowledge of dangerous or defective condition of the elevator prior to date of accident.

■ As to the Aschaffenburgs, plaintiff's right to sue them as corporate officers rests upon La.Rev.Stat.Ann. § 23:1101.[2] Nowhere in his deposition did plaintiff contest the correctness of Albert Aschaffenburg's affidavit denying pre-accident knowledge of any defective

---

1. Filed pursuant to a local practice.

2. "§ 1101. *Employee and employer suits against third persons causing injury; effect on right to compensation*

"When an injury for which compensation is payable under this Chapter has been sustained under circumstances creating in some person (in this Section referred to as third person) other than the employer a legal liability to pay damages in respect thereto, the injured employee or his dependent may claim compensation under this Chapter and the payment or award of compensation hereunder shall not affect the claim or right of action of the injured employee or his dependent against such third person, nor be regarded as establishing a measure of damages for the injury; and such injured employee or his dependent may obtain damages from or proceed at law against such third person to recover damages for the injury.

"Any employer having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit against such third person to recover any amount which he has paid or become obligated to pay as compensation to any injured employee or his dependent."

or dangerous condition of the elevator. In this factual posture, plaintiff failed to show any basis for liability to him under § 23:1101 by Albert Aschaffenburg as corporate officer, or director. Maxey v. Aetna Cas. & Sur. Co., 255 So. 2d 120 (La.App.), writ ref'd, 260 La. 123, 255 So.2d 351 (1971); Berry v. Aetna Cas. & Sur. Co., 240 So.2d 243 (La.Ct.App.), writ ref'd, 256 La. 914, 240 So.2d 374 (1970), cert. denied, 401 U.S. 1005, 92 S.Ct. 1255, 28 L.Ed.2d 541 (1971); Adams v. Fidelity & Cas. Co., 107 So.2d 496 (La.Ct.App.1958). Summary judgment was correctly granted in favor of Albert.

As to Lysle, plaintiff testified in his deposition that prior to the accident he told Lysle that the doors were jumping out of the track and needed to be fixed. Plaintiff also testified that several times he told Mr. Petrus, the manager of the hotel, about the doors, and that the manager told him [plaintiff] that he [the manager] had "told Lysle Aschaffenburg about it." Thus there was presented to the District Judge a conflict as to whether Lysle knew the doors were defective and whether he undertook to see that they were repaired. The District Judge made no findings and gave no explanation for granting summary judgment. Therefore, we have no way of knowing whether he misapprehended the state of the facts or whether he considered that under Louisiana law Lysle could not be liable even if he had knowledge and represented to the plaintiff that he would have the doors repaired.[3] The Louisiana law is unclear to us. The following cases tend to support a cause of action against the corporate officer. In Lemmons v. Zurich Ins. Co., 403 F.2d 512 at 515 (5th Cir. 1968), this court held: "Under Louisiana law, [plaintiff] has [a] cause of action against . . . an executive officer . . . [if he] can show that such officer had personal knowledge of the dangerous conditions on the site, had authority to correct such conditions and failed to do so." In Adams v. Fidelity & Cas Co., *supra*, a cause of action was upheld against the director of warehouse and yards, the safety director, and the vice-president in charge of operations, for the death of a man killed by a 500 pound reel that fell from a stack of steel. The complaint alleged that all three officers had knowledge of the perilous position of the reel and negligently permitted it to remain even though each had the authority to have it removed. In Boudreaux v. Falco, 215 So.2d 538 (La.Ct.App.1968), an employee injured by a falling scaffold sued (1) a director and stockholder of the employer, (2) a director, stockholder, and general superintendent of the employer, and (3) a foreman of the employer, alleging that a defective cable caused the scaffold to fall, and that each defendant knew of the defective condition and failed to remedy it although each had authority to do so. The lower court dismissed as to all defendants except the foreman. On appeal the Louisiana Court of Appeals held there was a cause of action against all three officers. In Cacibauda v. Gaiennie, 222 So.2d 632 (La.Ct.App.), writ ref'd, 254 La. 766, 226 So.2d 524 (1969), an employee was killed when crushed by a metal container, which fell because of a defective hoist and conveyor system. His widow and heirs sued (1) the plant manager, (2) plant superintendent, (3) chairman of the plant safety committee, (4) section day supervisor, (5) shift supervisor, and (6) hoist operator at time of the accident. Plaintiff alleged that each had knowledge of the defective condition of the hoist and failed to take steps to rectify it, although each had authority to do so.

---

3. This case demonstrates the need for amendment to Rule 56, Fed.R.Civ.P., to provide for a statement of reasons for granting summary judgment. In this case, as in others which reach us, we are unable to discern whether summary judgment was granted on factual or legal grounds. We can give no deference to the expertise of the District Judge with respect to the law of his own state, because we do not know whether he ever reached questions of law.

The lower court dismissed, the Louisiana Court of Appeals reversed and remanded, holding there was a cause of action against each defendant. See also Chabina v. Travelers Ins. Co., 251 So.2d 414, 416 (La.Ct.App.), writ ref'd, 259 La. 902, 253 So.2d 223 (1971):

> It is true that an injured employee has a cause of action in tort against the executive officers of his corporate employer, if the officers have breached a duty owed by them directly to the employee. . . . We think that such officers owe to the employees the duty of providing a reasonably safe place to work, and this duty would preclude the prescribing of unsafe working procedures.

Other Louisiana cases tend to show no cause of action. The defendant in Maxey v. Aetna Cas & Sur. Co., *supra*, was an executive officer, charged generally with negligence in failing to provide a safe place to work. The court disallowed the action, saying: "The only duty which an executive officer of a corporation owes to a third person, whether he be an employee of the corporation or a complete stranger, is the same duty to exercise due care not to injure him which any person owes to another." 255 So.2d at 122. The defendant in Dulaney v. Fruge, 257 So.2d 827 (La.Ct.App.), writs ref'd, 261 La. 482, 259 So.2d 921, 922 (1972), an executive officer of a corporation, was charged with negligent failure to provide safe equipment. The court disallowed the action. "Even if defendant Fruge did fail to provide proper safety procedures and safe equipment, his failures would constitute, in light of [Maxey v. Aetna Cas. & Sur. Co., *supra*] a breach of duties owed exclusively to the corporation and not to its employees." *Id.* at 831. In Berry v. Aetna Cas & Sur. Co., *supra*, the employee was injured as a result of defective brakes on a fork lift truck. He showed that defendants, (1) a plant manager, (2) two vice-presidents, and (3) a personnel director, knew of the defective condition and refused to allow a maintenance crew to work on Saturdays so as to repair the fork lift trucks when not in use. The employee was awarded damages, the Louisiana Court of Appeals reversed and rendered:

> Assuming, arguendo, that the brakes did not function properly, and if they had [the injury would not have occurred], we are unable to hold any one of these four executive officers negligent. First, there is no evidence of any complaints made to them of bad brakes on the fork lift trucks apart from complaints of a general nature concerning all the vehicles at the plant. Second, plaintiff's own witnesses admitted the maintenance men desired to return to the old schedule primarily in order to make time and a half on Saturday. Third, if there was any problem with equipment, the speed and efficiency of all the men were adversely affected, resulting in decreased earnings under the bonus program existing at the plant. Therefore, the men wanted a maintenance crew on Saturday. In summary, the substance of the grievances submitted to management was a question of money and not safety.

240 So.2d at 248–249.

In this situation we think the possible liability of Lysle Aschaffenburg should be considered in the first instance by a Louisiana trial judge, so we vacate the summary judgment in Lysle's favor. We do not intimate what the trial judge's decision should be, but if his action is at the summary judgment level he should enter a written statement of reasons.

Turning to Otis, the plaintiff testified that the elevator doors would jump the track and would hang up, and that they had been jumping the track repeatedly during the entire three months that he had been employed as elevator operator, sometimes as often as a dozen times a night. He stated that on several occasions before the accident he had told Mr. Petrus, the hotel manager, of the problems he was having with the doors. Plaintiff explained that when the doors

malfunctioned he would push, pull or kick them to put them back in operation, and that his injury occurred after the doors jumped the track and hung, and he pulled at them or pushed with his foot and they jumped back in the track and in so doing threw him against the wall and injured him. He testified that "[t]hey had men working there [on the doors of the elevator] several times," although he could not recall when it was, and that "[t]hey worked on the doors, trying to work them back and forth on the slide without jumping out."

We summarize the relevant factual matters before the District Judge. Otis had contracted to maintain the elevator. Plaintiff testified that the doors had been malfunctioning for three months. He stated that several times before the accident he reported the problem to the hotel manager. Plaintiff testified that he saw persons working on the doors several times. He did not fix the time as before or after the accident. Otis, however, by its own letter (see item 4, *supra*) stated that it was not called upon to correct any malfunction *as a result of the accident*. Otis did not come forward with its records or with information concerning whether it either had or lacked actual knowledge of the defective doors before the accident, or concerning whether its personnel had or had not been on the premises in the three months prior to the accident. Nor did it present to the District Judge the details, either in general or with particular respect to the pre-accident period, of its duties to inspect or maintain the elevator. Rather it has come forward with a letter written by one of its employees disclaiming post-accident notice of the defect. In addition, Otis' counsel made the argument, in his memorandum to the District Court, that if the elevator had been jumping the track repeatedly for three months, then "certainly" a report would have been made and Otis would have been called in to correct the condition under its maintenance contract, but that no such report was made. The factual assertion by counsel that no

report was made is not supported by the record. If counsel meant that no report was made to the hotel, plaintiff's undisputed testimony that he reported it to the manager several times is directly to the contrary. If counsel meant no report was made by the hotel to Otis, the record is silent on this point. Finally, Otis' counsel added to his memorandum a statement of fact that "the regular inspections made by Otis Elevator Company's personnel failed to reveal any such condition prior to or subsequent to the date of the accident." The record contains no such revelation, pre-accident or post-accident.

Based on the matters presented to the District Court in such form that he could properly consider them, a jury would be entitled to infer that Otis either knew or should have known of the defect prior to the accident. Thus the court erred in granting summary judgment in favor of Otis.

Affirmed as to the defendant Albert Aschaffenburg. Vacated as to Lysle Aschaffenburg. Reversed and remanded as to Otis.

Costs are taxed one-half against Lysle Aschaffenburg and one-half against Otis.

DYER, Circuit Judge (concurring in part and dissenting in part):

I concur in the affirmance of the district court's judgment with respect to Albert Aschaffenburg and concur in vacating the judgment in favor of Lysle Aschaffenburg. I dissent with respect to the reversal of the judgment in favor of Otis Elevator Company.

The only evidence that the plaintiff could produce in an attempt to keep Otis in the case was that "[t]hey [unidentified] had men working there several times," and that "[t]hey [unidentified] worked on the doors, trying to work them back and forth on the slide without jumping out." The plaintiff did not identify the workers as Otis employees and could not even say that this occurred prior to the accident. The ma-

jority, instead of deciding the case on the record, set up straw men and proceeded to knock them down with negative inferences, i. e., Otis did not come forward with records that it lacked knowledge of the defective doors prior to the accident; or did not come forward with records to show that its personnel had not been on the premises before the accident; or did not come forward to show what its inspection duties were prior to the accident; or did not show that no report was made by the hotel to Otis. Manifestly, Otis had no burden to come forward to meet these straw men because the plaintiff produced no evidence to raise such factual issues. On the record before us a jury would not be entitled to infer that Otis either knew or should have known of the defect prior to the accident. In my view the district court was correct in entering summary judgment for Otis.