270 So.2d 252 (1972)
Mrs. Doris R. MARTIN, Individually, etc., et al.
v.
Joseph GARLOTTE et al.
No. 8332.
Court of Appeal of Louisiana, First Circuit.
November 13, 1972.
Rehearing Denied December 26, 1972.
Writ Refused February 1, 1973.
*253 John E. Coleman, Jr., Aycock, Horne, Caldwell & Coleman, Franklin, David S. Foster, Voorhies, Labbe, Fontenot, Leonard & McGlasson, Lafayette, for appellants.
Wayne P. Bourg, Levy, Burleigh, Russo & Bourg, Morgan City, for appellees.
Before LOTTINGER, ELLIS and PETERS, JJ.
ELLIS, Judge:
This is a suit for damages arising out of the alleged wrongful death of her husband brought by Mrs. Doris R. Martin individually and as tutrix of her four minor children. Defendants herein are Joseph Garlotte and Travelers Insurance Company, his insurer. After trial on the merits by jury, a judgment was rendered in favor of plaintiffs and against the defendants in the total sum of $198,800.00, with the limits of liability of Travelers Insurance Company being stipulated at $100,000.00. From that judgment, the defendants have taken a suspensive appeal.
The record reveals that Roy J. Martin, the husband and father of the plaintiffs, was employed as a police officer by the City of Franklin, Louisiana. On December 24, 1966, in the evening, Officer Martin was preparing to go on routine patrol. He became engaged in a friendly scuffle with Officer Hal Swafford, at the conclusion of which Officer Swafford quick drew his pistol and accidentally shot Officer Martin in the mouth, killing him. This suit was brought against Joseph Garlotte, the Chief of Police of the City of Franklin, alleging that the sole and proximate cause of Officer Martin's death was Garlotte's negligence in a number of respects. In general, it is stated that Chief Garlotte failed to supervise his subordinates in the care and proper use of firearms, that he failed to set rules and regulations for the handling of firearms at the police station, that he permitted members of the police department to practice quick draw in the station, and that he knew or should have known that such *254 practices were being followed in the police station and did not do anything to prevent it.
On the trial of the case, it was shown that Chief Garlotte had been Chief of Police in Franklin for about six months prior to the time of this accident. A number of men did practice quick draw techniques in the station house. It was shown that at least one of these, Officer Swafford, had practiced same with a loaded revolver. There was a pistol range provided for the officers and they practiced quick draw at the range. Chief Garlotte testified that he did not know that such things were being done in the station house, and that he would have disciplined any officer who did quick draw a loaded pistol. He testified that he gave Officer Swafford and Officer Alvoid Larpenteur permission to engage in quick draw competition in the station house, provided they first unloaded their guns and counted each other's bullets to be sure the guns were unloaded.
One of the general orders which had been in effect under the prior Chief of Police as well as under Chief Garlotte specifically forbade horseplay with firearms in the station house. Chief Garlotte testified that he gave firearm safety lectures in the squad room periodically, and that he also gave safety procedures on the range. Neither Swafford nor Larpenteur could recall any lectures having been given in the station house, but would not say that no such lectures had been given. Other witnesses did recall the safety lectures in the squad room. No one of the five officers of the Franklin police force who testified were able to say that Chief Garlotte knew of quick draw practice in the station house, although one of them testified that he thought that the Chief knew it.
This is a so-called "executive liability" case. The question of executive liability is one which has been presented to the courts with increasing frequency since it was first discussed in Adams v. Fidelity and Casualty Co. of New York, 107 So.2d 496 (La.App. 1 Cir. 1958). Although different courts have discussed the question in different terms, it would appear that liability arises in such cases under Article 2315 et seq. of the Civil Code, and not because of any relationship created by the employment contract. There must be a direct duty owed by the executive to the employee, breached by the executive, and resulting in injury to the employee. See Adams v. Fidelity and Casualty Co. of New York, supra; Boudreaux v. Falco, 215 So. 2d 538 (La.App. 1 Cir. 1968); Maxey v. Aetna Casualty & Surety Company, 255 So.2d 120 (La.App. 3 Cir. 1971); Chabina v. Travelers Insurance Company, 251 So.2d 414 (La.App. 1 Cir. 1971). As is usual in tort cases, each must be examined in the light of its own peculiar circumstances in order to determine if there is liability.
In this case, the duty allegedly owed and breached by the defendant was that of furnishing him a safe place to work in the various respects hereinabove set forth. We do not believe that this case is one which involves practicing of quick draw techniques. The decision to draw the gun was made spontaneously and unilaterally by Officer Swafford, and arose out of horseplay which he initiated. He testified unequivocally that he knew it was dangerous to do what he did. He felt that had Chief Garlotte known that he was drawing a loaded weapon, he would have been fired from his job.
In the light of that testimony, and the fact that horseplay with guns was specifically forbidden by the published regulations of the department, we fail to see how Chief Garlotte can be found to be at fault under Article 2315 et seq. of the Civil Code. This accident would not have happened if Officer Swafford had followed the specific regulations promulgated by the defendant. More important, we do not believe that Chief Garlotte can be expected to foresee that one of his officers would violate, not only the said regulation, but also elementary standards of conduct relative to the use of *255 firearms which are within the common knowledge and experience of everyone, and of which he admitted that he was aware. As we said in the Chabina case, supra, executives "cannot be required to anticipate or forestall the possible negligence of their employees. . . ."
We are therefore of the opinion that the verdict of the jury was manifestly erroneous. The judgment appealed from is reversed, and there will be judgment herein in favor of defendants and against plaintiffs, dismissing plaintiffs' demands at their cost.
Reversed and rendered.