Henry Gerrard CLAY,
Plaintiff-Appellant,

v.

EQUIFAX, INC., et al.,
Defendants-Appellees.

No. 84–7263.

United States Court of Appeals,
Eleventh Circuit.

June 11, 1985.

Fred W. Killion, Jr., Patricia K. Olney, Mobile, Ala., for plaintiff-appellant.

Louis E. Braswell, Caine O'Rear, III, Mobile, Ala., for Equifax.

Champ Lyons, Jr., Mobile, Ala., for Paul Revere Life Ins. Co.

Harold L. Ferguson, Jr., Terry McElheny, Birmingham, Ala., for Nat. Union.

Bert S. Nettles, Forrest S. Latta, Mobile, Ala., for Nationwide.

Before GODBOLD, Chief Judge, ANDERSON, Circuit Judge, and THORNBERRY *, Senior Circuit Judge.

THORNBERRY, Senior Circuit Judge:

Plaintiff-appellant Henry Clay brought suit against three insurance companies and a credit reporting agency alleging defamation and violations of the Fair Credit Reporting Act (FCRA). 15 U.S.C. § 1681 *et seq.* The district court granted summary judgment in favor of all the defendants but did not state its reasons for doing so. Because we find that all of Clay's claims are either groundless or barred by the applicable statutes of limitation, we affirm.

## FACTS

During 1977 Clay, an attorney, applied for and received disability insurance from each of the defendant appellee insurance companies, Paul Revere Life Insurance Company (Paul Revere), National Union Fire Insurance Company (National Union), and Nationwide Mutual Insurance Company (Nationwide). Later in that year Clay discovered that he had cataracts and filed claims for benefits with the insurance companies. Subsequently, the insurance companies requested that defendant-appellee Equifax,[1] a credit reporting agency, investigate Clay and his claims for disability benefits. In March 1978 Equifax submitted investigative reports to National Union and Nationwide. In July 1978 Equifax submitted an additional report to National Un-

---

* Honorable Homer Thornberry, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

**1.** We use "Equifax" as a shorthand for Equifax, Inc., Equifax Services, Inc., and Equifax Services, Ltd. Although each of these entities is named as a defendant in this case, there is no reason to maintain the formal distinctions on appeal.

ion. Finally, in February 1979 Equifax submitted a report to Paul Revere. The reports stated *inter alia* that Clay was a suspected drug dealer and homosexual. They stated also that Clay was a "lazy attorney" who had wrongfully withheld his clients' money.

Clay testified in deposition[2] and by a subsequent affidavit that sometime during 1978 he telephoned Equifax and asked the receptionist if Equifax was investigating him. Although Clay's deposition and affidavit are somewhat contradictory on this point,[3] it appears that the receptionist told Clay that she did not know whether Equifax was investigating him, but would have someone at Equifax return his call. Equifax never returned the call. In 1979, however, Clay testified by deposition in a state court action that he knew that Nationwide had hired Equifax to investigate him.

On May 15, 1981, pursuant to Nationwide's request Equifax mailed to Nationwide copies of reports that it had submitted previously to Nationwide and the other insurance companies.

On February 24, 1983, Clay brought this action in the Circuit Court of Mobile County, Alabama, alleging defamation and violations of the FCRA. On motion of the defendants the case was removed to federal district court. On March 13, 1984, the district court granted summary judgment in favor of all the defendants, but gave no statement of reasons nor did it state the material undisputed issues of fact on which the decision was based or the conclusions

of law that were applied. On appeal Clay contends (1) that genuine issues of material fact remain, and therefore summary judgment was inappropriate, and (2) that we should require the district court to state specifically its reasons for granting summary judgment. Because upon examining the record and considering the appellate briefs we find that all of Clay's claims are either groundless or barred by the applicable statutes of limitation, we affirm the district court's order awarding summary judgment.

## I. Opaque and Unilluminating Summary Judgment Order

In granting the defendants' motion for summary judgment the district court stated no reasons, did not identify material disputed facts, and gave no hint of its conclusions of law. The court's order merely recites that no genuine issue of material fact remains, and we can find in the record no other statement, however informal, of the court's rationale. Clay contends that we should remand the case for the district court to issue findings of fact and conclusions of law in support of its judgment.

The Federal Rules of Civil Procedure do not require a district court acting on a motion for summary judgment to identify the materials it has considered in rendering its decision, its reasons for decision, the material and undisputed matters of fact on which the decision turns (if applicable), or the principles of law relied upon (if applicable). Consequently, in the hands of

---

**2.** Clay contends that the district court should not have considered any part of his deposition since it was never filed with the court. Nevertheless, the parties presented excerpts of the deposition in their briefs and motions to the court, and we conclude that it was proper for the court to consider these excerpts when making its ruling. *See Polsky v. Radio Shack,* 666 F.2d 824, 826 n. 4 (3d Cir.1981); *Munoz v. International Alliance,* 563 F.2d 205 (5th Cir. 1977); *McDaniel v. Travelers Insurance Co.,* 494 F.2d 1189 (5th Cir.1974). Furthermore, on August 9, 1984, the magistrate granted the appellees' Rule 10(e) motion to modify the record to include Clay's deposition.

**3.** Although we conclude that neither Clay's deposition nor his subsequent affidavit raise any genuine issues of material fact, we note that "[w]hen a party has given clear answers to unambiguous [deposition] questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins and Associates v. U.S. Industries,* 736 F.2d 656, 657 (11th Cir.1984).

an appellate court the order appealed from may be an enigma.

■ Frequently the material that a district court has considered is not identified unless the court's order identifies it. The district court may consider pleadings, depositions, answers to interrogatories, admissions on file, affidavits, oral testimony, matters subject to judicial notice, stipulations and concessions, and other materials admissible in evidence or otherwise usable at trial. 6 Moore Federal Practice § 56.-15[7]. The court may draw legal presumptions as well. *Id.* Moreover, some district courts provide by local rule for factual statements by moving counsel, not sworn to, that are accepted if not controverted.[4]

Review may be clouded by uncertainty concerning depositions. Procedures vary as to whether depositions must be filed with the clerk, and when, and whether they must be formally tendered to the court for its consideration. Similar questions may exist for transcripts of hearings. Consequently the appellate court may not know, and at times counsel are uncertain or in disagreement, as to what the court considered. Not infrequently briefs refer to matter that cannot be found in the record.

Secondly, both counsel and appellate court may be in the dark as to the district court's reason for decision. Reasons may be predicated on fact or law or both. The phrase "findings of fact" is often loosely used in connection with Rule 56. It is, however, a phrase singularly inappropriate because a premise of Rule 56 is that there is no genuine issue as to material facts, and the court is not required to find the facts specially and state its conclusions of law thereon as required in Rule 52(a). What is important in the summary judgment context is that the court, where relevant, identifies the undisputed facts on which its decision is based and identifies its conclusions of law as well. This can be done informally and even dictated to the court reporter.

When reviewing an unrevealing order granting or denying summary judgment, the appellate court is faced with several possibilities. The district court may have concluded that there is no genuine issue as to any material fact. Or it may have found that there is a genuine issue of fact but that the fact in question is not material. Under either of these alternatives, with fact issues out of the way, the court may have decided the case on a substantive legal ground. But, on the other hand, it may have concluded that there are material issues of fact and thus it may never have reached the substantive legal question at all. In some cases there will be more than one legal issue, with one a prerequisite for consideration of the other; for instance, there may be a choice of law issue and the court may have been required to choose the governing law and then apply the governing law. The reviewing court may be at a loss to know whether the district court based its decision on choice of law or on application of the law chosen.

There are numerous possible permutations. The appellate court, searching the summary judgment record and at times unsure of what that record is, must identify every possible ground that will support affirmance of the decision below and consider it, and if it rejects one ground then it must move to the next. *Aerolineas Dominicanas S.A. v. Brown Aviation Services, Inc.*, 598 F.2d 416 (5th Cir.1979) demonstrates the confusion that can arise.

At the pretrial conference, Aerolineas's counsel conceded that the damages requested in Counts II and III were excessive. Apparently for this reason alone, the district court granted summary judgment for the defendants on those two counts. This was error. Although Aerolineas's counsel was lamentably confused about the amount of damages his client had sustained, he maintained throughout that Aerolineas had indeed been wronged and damaged. Under these circumstances the district court

---

4. E.g., Local Rule 10 J 2, S.D. FL.

should at least have allowed Aerolineas to amend its complaint.

On the record before us there are no other justifications for summary judgment. To judge from the depositions and documents in the record, there is a genuine factual dispute about the truth of Aerolineas's assertions. The appellees argue that Aerolineas's claim is barred by the judgment rendered in another litigation, in Florida state court; but the district court seemed not to rest its grant of summary judgment on this ground, and the record does not disclose enough about the nature of the Florida proceeding to permit us to decide the question. On remand, the district court will have the full record before it and will be able to obtain other documentary evidence. It may or may not find sufficient reasons for granting summary judgment again.

*Id.* at 417 (footnotes omitted).

In the final analysis appellate review of what the district court did is largely an error-correcting function. Ordinarily the appellate court is given the tools to determine if the trial court acted correctly. The unexplained summary judgment order not only denies to the appellate court the tools of review but conceals what the court did and why and leaves the appeals court, like the proverbial blind hog, scrambling through the record in search of an acorn. This is antithetical to proper performance of the review function.

In a number of cases the Fifth Circuit has urged the district court to state the reason for its decision and the underlying predicate. *United States v. Hardeman,* 320 F.2d 115 (5th Cir.1963); *Melancon v. Insurance Company of North America,* 482 F.2d 1057 (5th Cir.1973) ("findings of fact" and "conclusions of law" are desirable and minimize duplication of judicial effort; material issue of fact identified, judgment reversed and remanded for trial on the merits); *Huckeby v. Frozen Food Express,* 555 F.2d 542, 545 (5th Cir.1977) (order did not reveal basis for district court's decision; court concluded that case was dismissed for want of jurisdiction; "a

concise statement by the district court of the grounds for its decision is desirable"); *Erco Industries, Ltd. v. Seaboard Coastline Railroad Co.,* 644 F.2d 424 (5th Cir. 1981) (recognizes that Rule 52(a) requirements of findings and conclusions are not applicable but reiterates that "the parties are entitled to know the reasons upon which the summary judgment was based in order to facilitate appellate review"); *Farbwerke Hoeschst A.G. v. M/V "Don Nicky,"* 589 F.2d 795, 798 (5th Cir.1979) ("If there was some rationalization or explanation which would have eliminated the apparent conflict in the affidavits here, an outline of the court's underlying reasoning could have prevented the necessity for reversal"); *Cooper v. General Motors Corp.,* 651 F.2d 249, 250 n. 1 (5th Cir.1981) ("We note once again that it is difficult to fathom unspoken reasons, and that district courts would render better service to the litigants and facilitate the review of their actions if they would at least dictate into the record the reasons for their rendition of a summary judgment."); *Jot-Em-Down Store, Inc. v. Cotter & Co.,* 651 F.2d 245, 247 (5th Cir. 1981) ("While the Federal Rules of Civil Procedure do not require a statement of reasons by a trial judge granting ... a summary judgment ... we have often stated that a reasoned statement is helpful not only to counsel but also to the appellate court [citations omitted]. In all but the simplest case such a statement usually proves not only helpful, but essential.")

The Supreme Court has vacated and remanded where the district court's order was "opaque and unilluminating as to either the relevant facts or the law." *Carter v. Stanton,* 405 U.S. 669, 672, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972).

The Fifth Circuit has vacated and remanded to the district court for it to unravel the Gordian knot and enter an order permitting rational and orderly review. *Montgomery v. Otis Elevator Company,* 472 F.2d 243 (5th Cir.1973) (court had no way of knowing whether trial judge misapprehended the state of the facts or adopted a view of state law; since the state law

was unclear, summary judgment vacated so that the case could be considered in the first instance by a federal judge from the state whose law applied and whose expertise would be entitled to deference); *Steed v. Central of Georgia Railway Co.*, 477 F.2d 1303 (5th Cir.1973) (district court provided no key as to the important facts nor did it state its rationale for granting summary judgment; many complex and difficult questions of fact and law were left unsettled; case remanded for merits trial); *Hanson v. Aetna Life & Casualty*, 625 F.2d 573, 575 (5th Cir.1980), (court noted that prior admonitions calling for statements of reasons had been precatory in character but that nevertheless "we have in practice insisted that district courts record—however informally—their reasons for entering summary judgment, at least where their underlying holdings would otherwise be ambiguous or inascertainable." The court found that to be the situation before it and vacated and remanded); *Mosley v. Ogden Marine, Inc.*, 480 F.2d 1226 (5th Cir.1973) (court unable to ascertain which of several theories formed the basis for the entry of summary judgment; vacated and remanded for entry of reasons in support of the court's order).

■ Nonetheless, the paramount concern in determining whether to remand a summary judgment for entry of an order susceptible of better review is judicial economy. In this case—though not without difficulty—we have determined from an examination of the record and the briefs that summary judgment was proper. We therefore, do not direct a remand.

## II. FCRA Statute of Limitations

The statute of limitations for actions under the FCRA is contained in 15 U.S.C. § 1681p:

An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within two years from the date on which the liability arises, except that where a defendant has materially and willfully misrepresented any information required under this subchapter to be disclosed to an individual and the information so misrepresented is material to the establishment of the defendant's liability to that individual under this subchapter, the action may be brought at any time within two years after discovery by the individual of the misrepresentation.

Under the statute an action is timely if filed within two years from the date on which the liability arose or within two years from the plaintiff's discovery of a material and willful misrepresentation on the part of the defendant. Accordingly, for the purposes of the FCRA statute of limitations, Clay's claims may be divided into two groups—claims arising from Equifax's 1981 mailing and claims arising from other prior acts of the defendants. Of the wrongs that Clay alleges the defendants committed, only the 1981 mailing occurred within two years of his filing suit. For all other claims, therefore, Clay must show a material and willful misrepresentation on the part of the defendants. We will consider separately each group of claims.

### A. The 1981 Mailing

On May 15, 1981, Equifax sent to Clay copies of certain reports it had prepared over the previous two and one-half years. Equifax's transmittal letter to Nationwide stated:

This confirms telephone conversation the morning of 5–14–81 where Mr. Clark [of Nationwide] requested a clearer copy of our interview with Mr. Clay. The carbon on our handwritten responses was dim in places for us to see, so it was necessary for us to overprint and this is to a true copy. Possibly another machine could get a better copy, but this is the best ours could do.

In addition, we have photocopies of the investigation we submitted to other customers since last reporting to you, as per your request, and these are attached.

Clay contends that by this 1981 mailing Equifax violated sections 1681e (failure to maintain reasonable compliance procedures), 1681 *l* (failure to verify adverse information), and 1681r (unauthorized disclosure by officer or employee of a credit reporting agency) of the FCRA. Accordingly, he argues that, at least as to these claims, summary judgment was inappropriate. Clay contends also that in requesting and receiving the 1981 mailing Nationwide violated section 1681q (obtaining information under false pretenses). Viewing the record in the light most favorable to Clay, we conclude that all of these claims are either groundless or waived.

■ Section 1681e of the FCRA provides:

> (a) Every consumer reporting agency shall maintain reasonable procedures designed to avoid violations of section 1681c of this title and to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title. These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose....
>
> (b) Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

Clay contends that Equifax violated this provision when it mailed to Nationwide copies of the old reports. However, no facts alleged in the complaint or otherwise stated in the record can be viewed as establishing such a claim. In his complaint Clay makes merely a broad, conclusory allegation that Equifax failed to maintain reasonable compliance procedures. Such an allegation without more is not sufficient to withstand a motion for summary judgment.

■ Moreover, we note that section 1681e(b) requires that consumer reporting agencies maintain reasonable compliance procedures when *preparing* reports. In 1981 Equifax prepared no new reports on Clay; it merely mailed copies of previously prepared reports. The 1981 mailing, therefore, could not be a violation of section 1681e(b).

■ Clay contends also that by its 1981 mailing Equifax violated section 1681 *l*. That statute provides:

> Whenever a consumer reporting agency prepares an investigative consumer report, no adverse information in the consumer report ... may be included in a subsequent consumer report unless such adverse information has been verified in the process of making such subsequent consumer report, or the adverse information was received within the three-month period preceding the date the subsequent consumer report is furnished.

It is clear that this provision is not applicable to the facts of this case. Again, Equifax prepared no new or "subsequent" report in 1981; it merely mailed copies of previously prepared reports. Section 1681 *l* prohibits the inclusion of stale and unverified information in new consumer reports. It does not address, however, the reproduction of existing reports. The copies that Equifax sent to Nationwide each indicated the date and circumstances of the reports and could not be confused as providing new or fresh information.

Clay's contentions regarding section 1681r, which prohibits an officer or employee of a credit reporting agency from making any unauthorized disclosures, are likewise meritless. Clay failed to plead or argue any section 1681r claims in the district court. Moreover, no Equifax officer or employee has been named as a defendant in this action.

Finally, Clay contends that Nationwide violated section 1681q when it requested and received the 1981 mailing. Section 1681q provides:

> Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined not more than

$5,000 or imprisoned not more than one year, or both.

We are at a loss, however, to find where Clay raised this issue prior to appeal. In his supplemental brief Clay states that his complaint fails to mention the 1981 mailing because he was unaware of it at the time he brought suit. He asserts that he became aware of the mailing during discovery. Although it would have been a simple matter for Clay to amend his pleadings to conform with this new information, he failed to do so before the district court entered summary judgment. Furthermore, we find nothing in the record that would raise a significant question concerning Nationwide's pretenses in obtaining the report copies.

### B. Other Claims

The remainder of Clay's FCRA claims are based on acts of the defendants that occurred more than two years prior to Clay filing suit. The two-year FCRA statute of limitations may be tolled only "where a defendant has materially and willfully misrepresented any information required under this subchapter to be disclosed to an individual and the information so misrepresented is material to the establishment of the defendant's liability to that individual under this subchapter." 15 U.S.C. § 1681p. Since Clay has failed to establish, and the record does not show, any willful misrepresentation on the part of any of the defendants, we find that the remainder of Clay's FCRA claims are barred. We address briefly Clay's arguments to the contrary.

■ Clay contends that Equifax failed to comply with the disclosure requirements of section 1681g and that such failure constituted a material and willful misrepresenta-

tion within the meaning of section 1681p. Section 1681g provides in pertinent part:

> Every consumer reporting agency shall, *upon request and proper identification* of any consumer, clearly and accurately disclose to the consumer: the nature and substance of all information ... in its files on the consumer at the time of the request.

(emphasis ours). Clay contends that his phone conversation with Equifax's receptionist constituted a request for disclosure within the meaning of section 1681g.[5] In deposition Clay described his phone call to the receptionist at Equifax:

> Also, at the time, seeing this person [Equifax investigator] out around my house when I called Equifax, I just called and talked to the receptionist over there and I wanted to find out what was going on. And she said she didn't have any way of knowing, but she would have somebody get in touch with me. So, you know, that might have been a request to find out about it, but nobody ever called me back.

We hold that Clay's phone conversation does not constitute a request for disclosure within the meaning of section 1681g. We emphasize that a disclosure under section 1681g is required only "upon proper request and identification" of the consumer. Moreover, section 1681h(b) provides in pertinent part:

> The disclosures required under section 1681g of this title shall be made to the consumer—... by telephone if he has made a written request, with proper identification, for telephone disclosure and the toll charge, if any, for the telephone call is prepaid by or charged directly to the consumer.

---

5. In addition, Clay testified by subsequent affidavit that he asked an Equifax employee who had come to his house to obtain a release of certain tax records whether Equifax was investigating him. According to Clay, the employee responded that Equifax would need Clay's consent prior to beginning an investigation. In his prior deposition, however, when asked whether he had ever requested Equifax to make any disclosures under the FCRA Clay responded, "I never thought about it." We reiterate that we will not allow a party to create an issue of fact by a subsequent contradictory affidavit. *Van T. Junkins and Associates v. U.S. Industries,* 736 F.2d 656, 657 (11th Cir.1984). Moreover, even were we to consider Clay's affidavit on this point, we would find that his exchange with the Equifax employee was insufficient to trigger the disclosure provisions of section 1681g. *See* section 1681h(b)(1).

Clearly, Clay did not comply with the prerequisites for telephone disclosure. His casual and undocumented "request" was not sufficient to trigger section 1681g.

Clay also contends that his cause of action did not accrue until he knew of the alleged failure of Equifax to follow the requirements of the FCRA and the causal relationship between such failure and the subsequent injury. We find this argument wholly unpersuasive. Clay would have us interpret section 1681p to mean that even in the absence of any willful misrepresentation on the part of the defendant liability does not arise under the FCRA until the plaintiff has discovered the defendant's violation. That we will not do.

Finally, Clay contends that because the insurance companies had a special duty to him as their insured, the statute of limitations would not begin to run until Clay discovered they had violated the FCRA. Section 1681p, however, leaves no room for such an interpretation.

*III. Defamation*

In his complaint Clay alleged that the defendants had libeled him by preparing, publishing, or circulating defamatory credit reports. In Alabama an action for libel must be commenced within one year from the date of publication. Ala.Code 1975, § 6–2–39(a)(4); *Harris v. Winter*, 379 So.2d 588 (Ala.1980). The statute may be tolled, however, where the defendant has a duty by virtue of a confidential relationship with the plaintiff to disclose the libelous matter. *Holdbrooks v. Central Bank of Alabama*, 435 So.2d 1250 (Ala.1983). This rule is derived from the application of Ala. Code 1975, § 6–2–3. That statute provides:

> In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud.

*See Holdbrooks*, 435 So.2d at 1251.

Since the latest possible publication in this case, the 1981 mailing, occurred more than one year prior to Clay filing suit, Clay must rely on the section 6–2–3 fraudulent concealment theory to bring his action within the one-year statute. Moreover, "[a] plaintiff using section 6–2–3 to toll the statute of limitations bears the burden of proving fraudulent concealment. [citations] A plaintiff using the tolling statute must allege, *or on summary judgment establish*, prima facie facts which show that the defendant fraudulently prevented discovery of the wrongful act upon which the action is based." *Sellers v. A.H. Robins Co., Inc.*, 715 F.2d 1559 (11th Cir.1983) (emphasis. ours). Clay, however, failed to establish facts which would show that the defendants fraudulently concealed the reports, and, therefore, did not meet his burden at summary judgment.

Clay contends, nevertheless, that the relationship of insurer to insured is of such a confidential nature as to impose a duty on the insurance companies to disclose the libelous matters to him. He argues that the insurance companies' failure to disclose amounts to fraudulent concealment and therefore tolled the statute. We do not agree that the relationship between insurer and insured satisfies the requisite test of confidentially. In a case relied on by Clay, the Supreme Court of Alabama held that "[t]o establish fraud by silence, facts should be averred from which a duty to speak arises—it should appear that the parties were not dealing at arms length." *Tonsmeire v. Tonsmeire*, 285 Ala. 454, 233 So.2d 465, 468 (1970). Although we recognize that insurers owe a duty of good faith to their insureds, we do not believe that duty is equivalent to the confidential relationship envisioned by the Alabama courts in these circumstances. Finally, we note that there is ample evidence that Clay knew of the allegedly defamatory publications more than one year before he brought suit.

For the aforementioned reasons we AFFIRM.